## C. EDITH GOULD

*v.*

## TIMOTHY HURLEY et al.

[Decided May 12th, 1909.]

1. Evidence, in a suit to avoid a deed, *held* to show it was signed and acknowledged as it purported to have been.

2. There was a delivery of a deed where, a father having put property in his daughter's name, she, at his request, executed a deed thereof to a third person, and gave it to the father, who sent it to the grantee's attorney.

3. A gift of lots by father to daughter is not proved by the testimony of the mother that, when the father got the daughter's signature to a consent for a trolley line, he said it would benefit her lots, and testimony of her husband that the father once told him he had given the daughter some property, at the place where the lots were located, and on another occasion, when asking him to sign a deed, stated he had a splendid opportunity to dispose of the daughter's property at such place, for her advantage.

4. Evidence of oral admissions and declarations is to be received with great caution.

5. The principle that a fraudulent conveyance is good *inter partes* cannot avail the grantee where she, at her grantor's request, conveyed the lots to another, and the latter, who had in fact purchased only one lot, conveyed the others to another person for the original grantor's benefit.

6. It cannot avail one, whose father put lots in her name as a cover, in seeking to avoid the deed she made thereof to another, at her father's request, that a complete agreement of sale was not made between her father and her grantee; they, or the parties representing them, being content.

On final hearing on pleadings and proofs.

*Mr. Ruliff V. Lawrence,* for the complainant.

*Mr. Lewis Starr,* for the defendants.

WALKER, V. C.

In his lifetime Frederick J. Anspach was the owner of eight certain lots in the borough of Spring Lake, New Jersey, and

on May 9th, 1896, his wife joining him in the deed, he conveyed them to his daughter, C. Edith Gould, the complainant, for an expressed consideration of "one dollar and other valuable consideration." She claims the lots as a gift from her father. She never had possession of them, nor of the deed for them. Upon the death of her father in 1905, his deed to her and a deed signed by her in blank as to a grantee, for the same premises, were found among his effects.

On May 2d, 1900, at her father's request, she made a deed, her husband joining her, whereby the title to the premises was divested out of her and put in the defendant Timothy Hurley. The consideration recited in this deed is $650, Mr. Anspach having negotiated a sale of one of the lots for that amount to Hurley, $100 to be paid in cash and $550 to be secured by a mortgage on the lot to be conveyed to him.

Prior to the making of the deed to Mrs. Gould by her father, the latter had entered into negotiations with Hurley for the purchase by Hurley of the one lot and Hurley signed a memorandum in writing, obligating himself to make the purchase. On July 1st, 1901, the complainant's father sent to Joseph McDermott, Esq., counsellor-at-law, who represented Hurley, two deeds, one for the eight lots made from the Goulds to Hurley, and one for seven of the same lots to be made by Hurley and wife to Mr. Anspach's brother James. The lot not included in the deed from Hurley and wife to James Anspach was the one for which Hurley had bargained. These two deeds remained with Mr. McDermott until after the death of Frederick J. Anspach. The deed from Hurley and wife to James Anspach was drawn by Mr. F. J. Anspach himself and enclosed to Mr. McDermott, but was not executed by Hurley and wife because it was a deed of warranty, and Mr. McDermott was unwilling to allow Hurley to execute any but a bargain and sale deed with covenants against the grantor. The transaction was not closed during the lifetime of F. J. Anspach because of unpaid taxes which were a lien against the lot to which Hurley was to take title. After the death of her father, and in 1907, Mrs. Gould paid $516 of taxes on these premises. This was after she knew that Hurley claimed one of the lots and that the estate of her

father claimed the beneficial ownership in the seven lots conveyed by Hurley to James Anspach after her father's death. Hurley, it should be remarked, has had possession of his lot since he signed the agreement to purchase, and has improved it. Of course, her father's dealings with Hurley do not bind her, but they have a bearing upon the status of the other defendants, and are pertinent in that aspect.

Mrs. Gould claims that she never knowingly executed, and never acknowledged the deed from herself and husband to Timothy Hurley. She testified that she signed but one paper with reference to these lots, which was at the request of her father, and which she said was explained to her by him as a consent for the construction of a trolley line in front of the lots in question. Besides the deed to Hurley she was confronted with the deed for the same lots without date and without the name of any grantee, which she admitted having signed; and there was also produced to her three other papers consenting to the construction of trolley tracks with reference to the lots, all of which she admitted she had signed. It would appear then that her recollection extended to only one of the trolley consents, and that her mind was an entire blank as to the two deeds, and the other two consents for the trolley company.

The acknowledgment to the deed to Hurley purports to have been made before James S. Phillips, a commissioner of deeds for the State of New Jersey, residing in Philadelphia, on May 2d, 1900, the date of the execution of the deed, and is regular in form, containing the separate acknowledgment of Mrs. Gould, as required by our statute. She says she never appeared before Mr. Phillips and never acknowledged the execution of the deed. Mr. Gould, her divorced husband, also stated that he did not appear before Mr. Phillips and acknowledge the instrument. He, however, admitted that on several occasions he had acknowledged papers before Mr. Phillips at the request of Mr. Anspach, his father-in-law. He says that when he signed the paper it had not been signed by Mrs. Gould, and she says that when she signed it it had not been signed by him. Their testimony concerning the transaction was given approximately eight years after the execution of the deed, and is, in my judg-

ment, unreliable as to the facts. Mrs. Gould, while positive that she executed but one paper with reference to the Spring Lake lots, was compelled to admit upon cross-examination that she signed five papers in all, two of them being deeds. Her husband, who had been divorced from her, asserted that he had not acknowledged the deed, but admitted that he had acknowledged the execution of several documents before the commissioner who took this acknowledgment. Mr. Phillips, the commissioner, testified that he had known F. J. Anspach a number of years and had taken acknowledgments of deeds for him for lands in New Jersey made by himself and members of his family. Shown the deed from Mrs. Gould to Hurley he stated that he took the acknowledgment and the certificate was written by him although he said he had no recollection of the circumstances under which the acknowledgment was made, and frankly said that he did not know either Mrs. Gould or her husband, and he said that the facts stated in the certificate to the best of his knowledge were true. I do not see why he would not assert unequivocally that they were true, in reliance upon his certificate, but, being a cautious man, doubtless, and not remembering the incident at all, he made the somewhat stereotyped reply that the facts were true to the best of his knowledge. He should, it seems to me, have been willing to have stated that they were true, because of his certificate. However, I do not think that the answer creates any uncertainty as to the fact, and I am prepared to believe, and do believe, that Mrs. Gould and her husband not only signed, but also acknowledged, their deed made to Hurley.

The facts and circumstances concerning the signing and acknowledgment of the deed in this case are, under the law, as enunciated by our courts, sufficient to prove its due execution and to uphold the transaction. *Tooker* v. *Sloan, 30 N. J. Eq.* (*3 Stew.*) *394; Black* v. *Purnell, 50 N. J. Eq.* (*5 Dick.*) *365.*

That the deed from Mrs. Gould and husband to Hurley was delivered is too plain, it seems to me, to admit of controversy. It will be remembered that F. J. Anspach, her father, put the title in Mrs. Gould without any consideration passing from her to him, and she, it would appear, willingly executed the deed to

Hurley at her father's request, and parted with the deed to her father, if indeed, she ever had it in her possession, for her father enclosed it to Mr. McDermott in his letter to him of July 1st, 1901, and he, Mr. McDermott, retained it until he lodged it for record on June 11th, 1907, and produced it upon the trial. It is certainly to be presumed that Mrs. Gould gave the deed to her father the moment she signed it, or left it with him, which amounts to a delivery, and parted with all control over it. This constitutes a valid delivery. *Jones* v. *Swayze, 42 N. J. Law (13 Vr.) 279; Vreeland* v. *Vreeland, 48 N. J. Eq. (3 Dick.) 56.*

In her bill and on the argument it was claimed that Mr. Anspach had made a gift of these lots to his daughter. Her mother, the widow of F. J. Anspach, was sworn and testified that she recalled the signing of a paper by her daughter with reference to a trolley consent, and that at the time he procured his daughter's signature the father said that it would benefit her lots at Spring Lake. Assuming that the witness accurately remembers what Mr. Anspach said some eight years before she testified, that loose declaration cannot be admitted to prove a gift of these lots to Mrs. Gould, nor can the statement of Mrs. Gould's former husband, to the effect that when Mr. Anspach asked him to sign the deed he told him that he had a splendid opportunity to dispose of the Spring Lake property for Edith's advantage, or his other statement that Mr. Anspach once told him that he had given her some property at Spring Lake.

Evidence of oral admissions and declarations belong to a class of proofs which should be received with great caution. Even when they proceed from the mouths of honest and disinterested witnesses, they are liable to imperfection and error, and a word, or a look, misunderstood, will produce upon the mind of the hearer an impression entirely different from that which the speaker intended to convey. *Jones* v. *Knauss, 31 N. J. Eq. (4 Stew.) 609, 616.*

Both of the parties testifying to these statements are apparently interested in the complainant; Mrs. Anspach, the mother, naturally so, and Mr. Gould, the former husband, although divorced, by his manner upon the stand and his apparent friendliness with his former wife in the court-room, gave every evi-

dence of a lingering interest in her. I do not say that these witnesses have willfully misrepresented what the decedent said, but my judgment is that they are mistaken or have misinterpreted the looks or language of Mr. Anspach when he made the declarations to which they testify. These declarations are meagre and of an inconclusive character, and certainly, in view of the other facts of the case, they cannot be given controlling effect, but must be subordinated to what appears to me to be the true facts.

It may be asked why Mr. Anspach put the title to these lots in the name of his daughter. The answer is probably to be found in the two facts, one, that his wife refused to sign a deed at his request, and this about the time the conveyance from father to daughter was made, and the other, that a judgment had been recovered against Mr. Anspach in Pennsylvania by a gentleman named Paul for a large amount of money, and Mr. Paul about the time of the conveyance was pursuing Mr. Anspach in New Jersey by attachment. Besides, Mr. Anspach was in the habit of placing the title to properties in his brother and other members of his family for his own purposes and convenience.

If I be right in my conclusion that Mrs. Gould executed, acknowledged and delivered the Hurley deed, she has no interest in the claim of the estate of her father to ownership in the seven lots conveyed by Hurley to James Anspach, who, as before stated, admits that he has no beneficial interest in them and that he holds the title for the estate of his brother. Hurley and wife have executed to Mrs. Gould a mortgage on the lot remaining to him. The mortgage bears even date with the deed from Mrs. Gould to him, and is for $450. It is admitted that counsel made a mistake in drawing the mortgage, and that it should have been for $550. Another mistake was putting it in the name of Mrs. Gould, for in his letter of instruction to counsel on July 1st, 1901, Mr. Anspach expressly directed that the mortgage be made in his own favor, meaning, of course, his own name.

Mrs. Gould claims that if her father were attempting to put title out of himself and in her for the purpose of forestalling Paul in the collection of his judgment, the executors of her father's estate cannot recover the title from her because of the rule that a conveyance made in fraud of creditors while void as

to them is good *inter partes,* as the law will not aid a fraud-doer, but will leave the parties to the transaction in *statu quo.* This might be a serious consideration in the case *sub judice* if it were not for the fact that Mrs. Gould herself made a conveyance of the property to a third person, namely, Hurley, for her father, and, therefore, if the rule is to be applied at all it will be in aid of a status which leaves her divested of title.

It is also claimed on behalf of the complainant that the minds of Mr. Anspach and Hurley never met, and that a complete agreement for sale between them was not made. This is a question in which the complainant is not concerned. It is true the memorandum signed by Hurley was not enforceable for want of particulars as to the time the mortgage should run and the rate of interest it should draw, &c. (*Potts* v. *Whitehead, 20 N. J. Eq. (5 C. E. Gr.) 55; Moore* v. *Galupo, 65 N. J. Eq. (20 Dick.) 194*), but the defendants appear to have no quarrel with each other on that score, and, besides, Hurley has actually executed a mortgage to Mrs. Gould. It can be decreed to be reformed, if necessary, by making it stand as security for $550 instead of $450, and Mrs. Gould can be decreed to assign it to the executors of her father's estate.

There will be a decree that the complainant has no right, title or interest in any of the eight lots in question; that the title of Hurley to the lot which remains in him is absolute, and that the bond from him and the mortgage from him and his wife to the complainant be canceled, and that he execute a proper bond and mortgage to the executors of the estate of Frederick J. Anspach, deceased, for $550, secured on his lot, with lawful interest, unless it shall become necessary to decree a reformation of the bond and mortgage already made, in which event they will be reformed and ordered to be delivered; that the defendant James Anspach convey to the executors of the estate of Frederick J. Anspach, deceased, the seven lots, title to which were vested in him by the conveyance from Hurley and wife.

The entanglement in which this affair has been involved was caused by the carelessness and loose methods of the late Frederick J. Anspach, owner of the premises in his lifetime, and therefore the costs of all parties, except Mrs. Gould, will be

ordered to be paid out of his estate. Mrs. Gould will be decreed to pay her own costs.

Whether Mrs. Gould's payment of taxes upon the premises is to be considered as compulsory, in which event she will be entitled to be subrogated to the lien of the borough of Spring Lake and to be repaid those taxes, or whether her payment of them was voluntary, is a question which was neither raised nor discussed upon the argument. It is important, and, as a fairly large sum is involved, I will hear counsel for the complainant, upon notice to the defendants, as to whether or not Mrs. Gould is entitled to subrogation and repayment with reference to the taxes.