(No. 2742.    Feb. 7, 1924.)

## WARD v. ARES et al.

### SYLLABUS BY THE COURT.

1.   Any false and malicious writing published by another is "libelous per se," when it has a tendency to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him.

2.   Two alleged libelous letters examined, and one held to be libelous per se, and the other not.

3.   Qualified privilege does not give absolute immunity from responsibility for libelous words, but has the effect merely of taking away from the libelous language the presumption of malice in their publication, and casts upon the plaintiff the burden of proving actual malice.

4.   Express malice may be proved either directly or indirectly from all the facts and circumstances surrounding the case, and, in deciding the issue of malice in a libel case, the nature and quality of the language used and the falsity of the publication are, among other things proper facts to be considered.

5.   Evidence reviewed, and held to substantially support the finding of malice.

6.   A finding of fact, based solely on an extra-judicial admission, is not unsupported by substantial evidence merely because of the general character of the evidence as an admission.

7.   Evidence offered and received for a limited purpose cannot be made the basis of a finding of fact wholly unconnected with such purpose.

8.   An assessment of damages, based on erroneous material findings is erroneous.

Appeal from District Court, Eday County; Bratton Judge.

Action by Myrtle N. Ward against Mabel E. Ares and husband.    From a judgment for plaintiff, de-

fendants appeal. Reversed, and remanded for new trial.

Reid, Hervey & Iden and Curtis Hill, all of Roswell, for appellants.

E. P. Bujac and Lamb and McGhee, all of Carlsbad, for appellee.

OPINION OF THE COURT.

BOTTS, J.   Action for libel brought by the appellee against the appellants, based on two letters dated June 13, 1918, and June 23, 1918, respectively, written by the appellant Mabel, and transmitted by mail to Albert Ares, from Eddy County, N. M., to Austin, Tex. Appellants are husband and wife, and Albert is the son of the appellant Paul and stepson of the appellant Mabel. Appellee is a young unmarried woman living at Carlsbad, N. M., and at the time the letters were written and received was the fiancee of Albert, who, at that time, was a soldier in camp near Austin, Tex. Albert seems to have been engaged at the same time to Lillian Bearup, a younger sister of the appellant Mabel. The record would indicate that at the time of the writing of the letters there was considerable ill feeling between the family of appellee and the appellants, and the appellant Mabel was apparently very solicitous that her stepson should marry her sister instead of the appellee. The court found that the statements, charges, and accusations contained in said letters were false and untrue, and were known to be so by the appellant Mabel at the time they were written, and were made from a malicious desire upon the part of the writer to defeat the marriage of the appellee and Albert and to bring about the marriage between Albert and Lillian. This finding seems to be fully supported by the evidence.

[1]   Both appellee and Lillian lived in New Mexico and went to Austin, Tex., about the same time, each for the purpose of marrying Albert, arriving there

shortly after the receipt by Albert of the two let-
ters above mentioned. Lillian was successful, but the
appellee returned to New Mexico a single woman. By
her complaint, she charged that by means of said
false communications she was injured in her char-
acter and reputation, and her said fiancee broke off his
engagement as a consequence thereof, to her great hu-
miliation and disgrace, and prayed damage in the
sum of $25,000. The case was tried to the court with-
out a jury, and resulted in a judgment for $3,000
actual and $1,000 exemplary damages. Nothing was
pleaded by way of inducement, colloquium, or in-
nuendo, and the first point urged by appellants is that
the statements relied upon are not libelous. Since the
purpose of pleading and proving innuendo in a libel
case is to give point or meaning to matter which is not,
of itself, or standing alone, libelous, it naturally fol-
lows that in the absence of innuendo the action must
necessarily fail, unless the language assigned as the
basis of the action be libelous per se. Under the cir-
cumstances, therefore, appellants' first point raises a
question of primary importance. This court, in the
case of Colbert v. Journal Publishing Co., 19 N. M.
156, 142 Pac. 146, has laid down the rule by which we
are to be guided here in determining whether or not
the letters involved herein are libelous per se. In that
case the court adopted Judge Cooley's statement of the
general rule, as follows:

"Any false and malicious writing published of another is
libelous per se, when its tendency is to render him contemp-
tible or ridiculous in public estimation, or expose him to
public hatred or contempt, or hinder virtuous men from as-
sociating with him."

[2] But, even when furnished with this clear state-
ment of the rule, it is not easy to measure, accurately,
any given statement when it falls close to the border
line between libelous and nonlibelous matter. Such is
the characteristic, as we see it, of the letter of June 13.
We have studied it carefully from all angles, and,
while it is mean, silly, and foolish in its language, we

have not been able to find anything therein, taking the language at its face value as we must, which would normally affect the public mind against appellee in the manner required by the rule quoted. We hold, therefore, that the letter of June 13 does not contain language which is libelous per se. No good can come from setting it out in this opinion, as we cannot believe that it would ever serve as a precedent in a future case— such a letter will never again be written. The trial court seems to have been very doubtful as to the libelous character of this letter, since, at the close of appellee's case, and at the request of appellants that they be required to direct their evidence only to such portions of the alleged libelous matter as the court should hold to be libelous per se, the court indicated that in its opinion only two statements were libelous, both of which were contained in the letter of June 23, and one of which we shall notice particularly later; but at the close of the whole case the court concluded, as a matter of law, that both of said letters were libelous, without, however, pointing out the particular statement or statements in the letter now under consideration which gave it that character. In our opinion, the court erred in this conclusion in so far as it applied to the letter of June 13.

We do not encounter the same difficulty with the letter of June 23. In that letter, the writer said, speaking of the appellee,

"You know the time she was in the Hospital and the tail that was out as to what she had done. Well, if that is so, she could be no wife only an agrivation, don't you know that. And would make life a H. for a man. There is no woman left to her C? I must tell you this your dad said if I was him and wanted————I would just take $10 and go somewhere and sleep and not have to marry a thing like that."

Little is left to the imagination here, and, bearing in mind that the letter was written concerning a young woman and to her fiancee, no elaboration is necessary to bring this statement plainly within the rule above

quoted. Other statements contained in this letter are said by the appellee to be equally within the rule, but enough has been quoted and said to indicate that the court did not err in its conclusion that the letter of June 23 is libelous per se.

Appellant's next point is that the relationship existing between the appellants and Albert gives rise to a qualified privilege by which they are protected, even though the subject-matter of the letters be otherwise libelous. In this connection, they argue that the purpose of the letters was to protect Albert, the son and stepson of the appellants, from what they considered would be an unhappy alliance should he marry the appellee, and that there was a duty on the part of the appellants to protect Albert from such misfortune. Both parties make no distinction so far as the rule of parental privilege is concerned as between a stepparent and a parent, and we shall here consider that there is none. The appellee does not dispute the proposition that a parent has the right, in good faith and honestly, to advise a child in respect to the wisdom of a contemplated marriage, but says that in this case the communications were not made in good faith, but maliciously and for the benefit of the stepmother's sister, Lillian, rather than for the benefit of Albert.

[3] The books say that a qualified privilege. such as that contended for here, does not give absolute immunity from responsibility for libelous words, but has the effect merely of taking away from the libelous language the presumption of malice in their publication, and casts upon the plaintiff the burden of proving actual malice. If that burden be assumed and carried by the plaintiff, the qualified privilege becomes functus officio and affords no further protection. White v. Nicholls, 3 How. 266, 11 L. Ed. 591; Washburn v. Cooke, 3 Denio (N. Y.) 110; Sullivan v. Strathan-Hutton-Evans Commission Co., 152 Mo. 268, 53 S. W. 912, 47 L. R. A. 859. In the case of White v. Nicholls, supra, the Supreme Court of the

United States, after an extended investigation and review of English and American authorities, concisely stated the rule as follows:

"The investigation has conducted us to the following conclusions, which we propound as the law applicable, thereto: 1. That every publication, either by writing, printing, or pictures, which charges upon or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous, or odious, or ridiculous, is prima facie a libel, and implies malice in the author and publisher towards the person concerning whom such publication is made. Proof of malice, therefore, in the case just described, can never be required of the party complaining beyond the proof of the publication itself; justification, excuse, or extenuation, if either can be shown, must proceed from the defendant. 2. That the description of cases recognized as privileged communications must be understood as exceptions to this rule, and as being founded upon some apparently recognized obligation or motive, legal, moral, or social, which may fairly be presumed to have led to the publication, and therefore prima facie relieves it from that just implication from which the general rule of the law is deduced. The rule of evidence, as to such cases, is accordingly so far changed as to impose it on the plaintiff to remove those presumptions flowing from the seeming obligations and situations of the parties, and to require of him to bring home to the defendant the existence of malice as the true motive of his conduct. Beyond this extent no presumption can be permitted to operate, much less be made to sanctify the indulgence of maice, however wicked, however express, under the protection of legal forms. We conclude then that malice may be proved, though alleged to have existed in the proceedings before a court, or legislative body, or any other tribunal or authority, although such court, legislative body, or other tribunal may have been the appropriate authority for redressing the grievance represented to it; and that proof of express malice in any written publication, petition, or proceeding, addre ssed to such tribunal, will render that publication, petition, or proceeding, libelous in its character, and actionable, and will subject the author and publisher thereof to all the consequences of libel. And we think that in every case of a proceeding like those just enumerated, falsehood and the absence of probable cause will amount to proof of malice."

In the Washburn Case, the New York court said:
"In the common case of a libelous publication, or the use of slanderous words, the charge of malice in the declaration calls for no proof on the part of the plaintiff, beyond what may be inferred from the injurious nature of the accusation. The principle is a broad one. In all cases where a man intentionally does a wrongful act, without just cause or excuse, the law implies a malicious intent to-

wards the party who may be injured; and that is so, even though the wrongdoer may not have known at the time on whom the blow would fall. But in actions for defamation, if it appear that the defendant had some just occasion for speaking of the plaintiff, malice is not a necessary inference from what, under other circumstances, would be a slanderous charge; and it will often be necessary for the plaintiff to give other evidence of a malicious intent. There may be many of these privileged communications, as where the charge is made in giving the character of a servant; or in a regular course of discipline between members of the same church; in answering an inquiry concerning the solvency of a tradesman, or banker; or where the communication was confidential, between persons having a common interest in the subject to which it relates. In these, and other cases of the same nature, the general rule is, that malice is not to be inferred from the publication alone. The plaintiff must go further, and show that the defendant was governed by a bad motive; that he did not act in good faith, but took advantage of the occasion to injure the plaintiff in his character or standing."

[4] We do not understand that the appellants seriously question this rule, but argue that the burden was not carried by appellee and that express malice was not proved. The question of malice is one of fact which, in this case, has been decided by the court adversely to the appellants. The court specifically found that in writing said letters and making the charges, accusations, and insinuations therein contained, the appellant Mabel E. Ares acted with malice, and, further, that the statements, charges, and insinuations contained therein were false and untrue, and were known by said appellant to be false and untrue at the time they were written. If this finding is supported by substantial evidence, we shall not disturb it here. Express malice, of course, must be proved and is never implied or presumed, but it may be proved, either directly or indirectly, from all the facts and circumstances surrounding the case, and, in determining the fact of malice, the court could consider, among other things, the nature and quality of the language used. Nailor v. Ponder, 1 Marv. (Del.) 408, 41 Atl. 88; Sullivan v. Stratham, etc., supra; Atwill v. Mackintosh 120 Mass. 177; Byrd v. Hudson, 113 N. C. 203, 18 S. E. 209; and the falsity of the publication; White

v. Nicholls, supra; Atwill v. Mackintosh, supra; Laing
v. Nelson, 40 Neb. 252, 58 N. W. 846.

The Supreme Court of the United States in the
White Case, supra, as already noted from the quota-
tion, held that falsity, in the absence of probable cause,
will prove the malice; and the Supreme Court of
Massachusetts in the Atwill Case, supra, used the
following language:

"It may happen, however, that an occasion which would
justify such a communication may be abused in such a
manner as' to deprive the party making it of the excuse
of privilege. Upon this question, the plaintiff would have
a right to go to the jury, for the reason that a decision
by the court, that the occasion was priviliged proceeds upon
the assumption that the communication was honestly made,
in the belief that it was true, and with no motive of malice
—an assumption which the plaintiff has the right to show
to be untrue, if he can. The jury may draw the inference
of malice, not only from extrinsic facts—as, for instance,
from proof that the defendant knew the charges to be
false, or had no reason to believe them to be true—but also
from the terms in which the communication is made. If
those terms are in manifest excess of the occasion (Fryer v.
Kinnersley, 15 C. B. [N. S.] 422); if they contain strictures
on motives and conduct not warranted by the facts (Cooke
v. Wildes, 5 E. & B. 328); or if they go beyond what is
reasonable in imputing crime—all these circumstances would
tend to show malice. It was therefore a mistake to with-
draw the case from the jury. It should have been sub-
mitted to them to decide whether it was an honest report,
made in good faith, justified by the information which the
defendant had obtained, and with a reasonable purpose of
protecting the rights and interests of the party in whose
behalf he had acted; or whether, on the other hand, it was
made with a purpose wrongfully to defame the plaintiff."

[5] The appellant Mabel admitted, on cross-ex-
amination, that nearly all of the statements, charges,
and insinuations contained in the letter were false, and
we think the court's finding of falsity is amply sup-
ported by the evidence. This circumstance, taken in
connection with the character of the publication itself,
and the appellant's interest in furthering the prospects
of her sister Lillian as against those of the appellee,
amply support the finding of malice which, under
the circumstances, has the effect of nullifying such

qualified privilege as may otherwise have protected the writer from libel.

Counsel for appellants seek to distinguish the situation of the appellant Paul from that of his wife, in that he was not actuated by the same considerations as those which prompted her in the writing of the letters, and that his motive may well have been good, even though hers was malicious; but it seems to us that, if the appellant Paul assisted and co-operated in writing the libelous letter, a question which we shall next proceed to consider, the court's finding of malice on his part is supported by the same facts and circumstances as those supporting the finding of malice on the part of his wife, save, possibly, that his desire to promote the interest of his sister-in-law, Lillian, is not quite so apparent as is that of his wife.

[6] Is the court's finding that the appellant Paul advised and co-operated with the appellant Mabel in writing the libelous letter supported by substantial evidence? The only evidence offered in support of this finding was of an extrajudicial admission said to have been made by Paul in a conversation with the appellee some three years before the trial, which two witnesses inside a house, some 40 or 50 feet distant, say they overheard. This appellant not only strenuously denies the making of any such admission, but also any knowledge of the writing of the letter and its contents. Be that as it may, we are here concerned only with the sufficiency of the evidence supporting the finding, even though it be disputed. Counsel argues that such an extrajudicial admission is not sufficient evidence, but cites no authority in support of the contention. An examination of a large number of cases, however, discloses that the courts with uniformity have observed that an evidence of oral admissions should be received with great caution and accorded slight weight in the decision of a question of fact to which it relates (2 Wigmore on Evidence, §§ 1055 and 1056; Ingram v. Illges et al., 98 Ala. 511, 13 South. 548; Rodgers v. Burt, 157 Ala. 91, 47 South. 226; Kauff-

man v. Maier et al, 94 Cal. 269, 29 Pac. 481, 18 L. R. A. 124; Freeman v. Peterson et al., 45 Colo. 102, 100 Pac. 600; Husted v. Mead ,58 Conn. 55, 19 Atl. 233; Hewett v. Lewis, 15 D. C. [4 Mackey] 10; Burk v. Hill, 119 Ga. 38, 45 S. E. 732; Bragg v. Geddes et al., 93 Ill. 39; Chandler v. Schoonover, 14 Ind. 324; Mc Mullen et al. v. Clark, 49 Ind. 77; Pence v. Makepeace et al., 65 Ind 345; Oberholtzer v. Hazen. 101 Iowa, 340. 70 N. W. 207; Vaughn and McKee's Heirs v. Hann, 6 B. Mon. [Ky.] 338; Higgs v. Wilson, 3 Metc. [Ky.] 337; Rone v. Smith's Adm'r [Ky.] 42 S. W. 740; Kinney v. Murray et al, 170 Mo. 674, 71 S. W. 197; Gould v. Hurley et al., 75 N. J. Eq. 512, 73 Atl. 129; Stephens v. Vroman, 18 Barb. [N. Y.] 250; Roberge v. Bonner et al., 94 App. Div. 342, 88 N. Y. Supp. 91; Tousey v. Hastings, 194 N. Y. 79, 86 N. E. 831; Clement v. Clement, 54 N. C. 175; Crowell v. Western Reserve Bank, 3 Ohio St. 406; Phelps v. Seely, 22 Grat. [Va.] 573; Garrett, et al. v. Rutherford et al., 108 Va. 478, 62 S. E. 389; Husbrook v. Strawser, 14 Wis. 403; Saveland v. Green, 40 Wis. 431); but we have found no court which has gone so far as to say that such evidence, standing alone, solely because of its general character as an admission, is insufficient to support a verdict or finding of fact. The weakness of such evidence lies, not so much in its character as an admission, but rather in the general unreliability of proof of the admission, due to the fact that such proof is subject to imperfection and mistake and the ease with which it may be fabricated without serious danger of detection. In this case the admission, of which testimony was given, was that Paul knew what Mabel wrote, that he told her to write it, and that they did what they did for spite, and the testimony of the witnesses who claimed to have heard the admission is uniform as to its contents and character— we were about to say suspiciously uniform, but are reminded that the question of credibility was one for the trial court. We cannot say from the record that the trial court accorded this evidence any greater

weight than that to which the law holds it to be entitled, even though we might have decided otherwise were we authorized to pass upon the weight of the evidence and the credibility of the witness, and therefore cannot say that the finding of the court upon which the liability of the defendant Paul is based is unsupported by substantial evidence.

· Finally, appellants contend that the judgment is excessive. They recognize the general rule that proof of a single publication of matter which is libelous per se entitled the plaintiff to general damages (Adams v. Lawson, 17 Grat. [Va.] 250, 94 Am. Dec. 455), the amount of which, subject to certain exceptions not necessary to be noticed here and in nowise contended for by appellants, rests largely in the sound discretion of the jury, or the court, if the case be tried without a jury (Gambrill v. Schooley, 93 Md. 48, 48 Atl. 730, 52 L. R. A. 87, 86 Am. St. Rep. 414). They say that some of the elements which must have been used by the court in this case as a foundation for damages are themselves without foundation.

The appellee convinced the court, and the court found that the libelous letter had been published— first, to the addressee; second, to various persons in and around Carlsbad subsequent to plaintiff's return from her unsuccessful trip to Austin, Tex.; and, third, by copies thereof being attached to the complaint in a divorce suit afterwards filed by Albert against his wife Lillian.

As to the first publication, there can be no controversy. With reference to the second, it is to be noted that the court also found that Albert delivered both of these letters to the appellee when she was in Austin, and that they had been in her possession ever since that time. It would seem to follow that, if the contents of these letters were published to persons in and around Carlsbad after her return from Austin, she must necessarily be responsible for such publication,

and that the appellants would not be responsible. Schoepflin v. Coffey, 162 N. Y. 12, 56 N. E. 502.

[7] As to the third publication by the divorce suit, the record discloses that the only evidence tending to support this finding is the complaint in that case, which was offered and received in evidence solely for the purpose of impeaching the witness Albert as to his testimony with reference to the effect these letters had on his engagement with the appellee. Having been received solely for that purpose, it cannot be made the basis of a finding of fact wholly unconnected with such purpose. Carron v. Abounador, 28 N. M. 491, 214 Pac. 771. The finding of the third publication, therefore, is wholly without support in the evidence. This divorce suit was filed about three days before the libel suit was instituted, the complaints in the two cases were prepared by the same attorney, and said letters were wholly immaterial to the alleged grounds of divorce, and could have no possible bearing thereon. This merely in passing.

[8] Since the evidence of additional publications is material for the purpose of aggravating the damages (Harbison v. Shook, 41 Ill. 141; Stowell v. Beagle, 79 Ill. 525; Hatch v. Potter, 2 Gilman [Ill.] 725, 43 Am. Dec. 88; Leonard v. Pope, 27 Mich. 145; Fowler v. Gilbert, 38 Mich. 292; Williams v. Harrison, 23 Mo. 411; Kean v. M'Laughlin, 2 Serg. & R. [Pa.] 469), it must be assumed that a finding of such additional publications affected such an aggravation, and that the damages assessed are greater than they would have been had not such finding been made. The finding being erroneous, an assessment of damages based thereon is necessarily erroneous. Furthermore, we have noticed that the court erroneously found the first of the two letters to be libelous per se, and the supposed libelous character of that letter and its publication must also have been considered by the court as an element of damages.

To what extent these erroneous elements may have been considered by the court in assessing the amount of the judgment we are in no position to determine, and a new trial will therefore be necessary.

It follows that, for the reasons stated, the judgment of the court below should be reversed and remanded, with directions to award the appellants a new trial, and it is so ordered.

PARKER, C. J., and LEAHY, District Judge, concur.