Charles M. ANDERSON, Individually, and Gibson Products Company of Alamogordo, Inc., a New Mexico Corporation, Appellants,

v.

DUN & BRADSTREET, INC., a corporation, Appellee.

No. 75–1421.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 23, 1976.

Decided Oct. 19, 1976.

F. Randolph Burroughs, Burroughs & Rhodes, Alamogordo, N. M., for appellants.

Gary R. Kilpatric, Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, N. M., for appellee.

Before LEWIS, Chief Judge, SETH, Circuit Judge, and MORRIS, Chief Judge.*

MORRIS, Chief Judge.

This is a libel action. The plaintiffs and appellants are Charles M. Anderson and Gibson Products Company of Alamogordo, Inc., a New Mexico corporation. The defendant and appellee is Dun & Bradstreet, Inc. Anderson is President and Chief Executive Officer of the plaintiff corporation. The essence of plaintiffs' claim is that the defendant published a series of reports stating that Anderson was a general partner and an owner of Gibson Products Company of Arizona; that in truth and in fact Anderson was not at the time the reports were published or at any other time a general partner of said company; that the defend-

* Of the United States District Court for the Eastern District of Oklahoma, sitting by designation.

ant did not follow reasonable investigative procedures in ascertaining the facts; that Gibson Products Company of Arizona went into bankruptcy and thereafter the defendant started listing various matters involving Gibson Products of Arizona on the Gibson Products Company of Alamogordo, Inc.'s business reports; that the publication of these erroneous and false reports were both negligent and malicious and that both plaintiffs suffered extensive damages as a result thereof.

The jury rendered a verdict in favor of appellee. Appellants here urge four instances of error. They contend that the trial court erred (1) in excusing a juror for cause after the commencement of the trial; (2) in refusing to instruct on negligence; (3) in instructing that appellee is entitled to a qualified privilege in appellants' libel action; and (4) in its instruction regarding the proof of malice necessary to overcome such qualified privilege.

Appellee argues that no errors were committed in the discharge of the juror or in the instructions. Appellee further contends that no proper objection was raised at trial as to the instruction about malice so that this issue was not properly preserved on appeal. Appellee also asserts that the second, third and fourth propositions of error constitute assertions by appellants that the trial court incorrectly decided undecided questions of New Mexico law, but that appellants have not made any showing that such decisions were clear error, a showing which appellee contends is necessary before this court may consider the propriety of the trial court's rulings with respect to undecided questions of state law.

The four points raised by appellants will be discussed separately.

### 1. *Dismissal of Juror.*

On the morning of the fourth day of the trial the trial judge excused one of the jurors and seated an alternate juror. The original juror was excused after she revealed that during the evening recess she had inadvertently met and had a conversation in a local bar with a Mr. Briggs, whom

she had not previously known, who was an employee of appellee. Although he had been in the courtroom during the trial she did not recognize him and was sure he had not recognized her until after he invited her to dance, and they began to talk. Each was alone and they were sitting at adjoining tables. Briggs had asked her to dance and while they were dancing had told her that he was the representative of appellee who had been sitting at the back throughout the trial. The juror said that Briggs said that "It's too bad that we met like this," to which she replied, "I think it is, it's rather inadvertent"; he then suggested their meeting be "a secret just between you and me." He also offered to buy her a drink, which she refused.

The juror herself brought the matter to the attention of the trial judge, who excused her on his own motion. The appellants objected when she was excused. Here, appellants contend that the dismissal of this juror was an abuse of discretion because the juror repeatedly asserted that she could still be fair and impartial; because on voir dire this juror had admitted an acquaintanceship with the attorney for appellants and hence the hint of impropriety would attach to appellants, not appellee, in the minds of the remaining jurors; because the substitution of an alternate juror after appellants' presentation of most of their case prejudiced appellants for the reason that alternate jurors are less attentive than seated jurors; and because appellee should not have been permitted to benefit from the wrongdoing of its own employee.

Decisions about whether to seat or excuse jurors are in the discretion of the trial court, and such decisions will be reversed only where there has been an abuse of discretion. *United States v. Mason,* 440 F.2d 1293 (10th Cir. 1971), *cert. denied* 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971); *United States v. Porth,* 426 F.2d 519 (10th Cir. 1970), *cert. denied* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). There was no abuse of discretion here. On learning of the chance encounter between an employee of appellee and the juror, Judge

Bratton promptly informed counsel and undertook on the record a series of private conversations with the juror; he discussed the details of the encounter, her reactions to it, and the possible effect it might have on her verdict. The juror repeatedly answered the court's questions that she felt her impartiality had not been affected, but she also expressed distress that appellee's employee, on learning her identity as a juror, had wanted to keep their meeting a secret. The trial court ultimately concluded, in conversation with counsel and outside the presence of the juror, that "Well what I'm going to do, I'm going to excuse the lady, much as I dislike doing so, because— for many reasons, one of which is the embarrassment to her. Obviously, she's disturbed or she would not have reported it to me, and in spite of her expressed feelings, in my judgment, the incident is one which would affect her." When the judge informed the juror, again in private, that he would excuse her, the juror replied, "Well, I think that probably that might be best," and "it could be something that could cause a mistrial, and that would bother me."

The procedure followed by the court and the court's decision suggest no abuse of discretion. The trial judge conducted a thorough investigation of the matter and made his decision after ample opportunity to observe the juror and assess her ability to continue to serve. A record of each conversation with the juror was made and was on each occasion read to counsel. The court's discretion was carefully and prudently exercised.

■ Appellants argue that as a result of voir dire examination the other jurors were cognizant that appellants' attorney was acquainted with this juror. Because of this knowledge, appellants contend, the other jurors were bound to assume that appellants were responsible for the juror's discharge. This is pure conjecture. The explanation of the incident made by the judge to the remaining jurors was carefully calculated to avoid prejudice to either side. And we cannot conclude that any prejudice could or did result from the dismissal.

■ Appellants also speculate that they were prejudiced because the alternate juror seated in the place of the excused juror would not have been so attentive as the excused juror during the presentation of appellants' case in chief. Appellants neither argue nor attempt to show that the alternate juror was in fact inattentive. We have held that we will not impute to jurors a disregard of their express duties. *United States v. Baca,* 494 F.2d 424 (10th Cir. 1974).

■ Appellants also argue that appellee should not have been permitted to benefit from its own wrongdoing. Appellants did object to the dismissal of the juror and the trial judge noted concern at the time about excusing a juror satisfactory to appellants because of the conduct of appellee's employee. But appellants have failed to show that any prejudice resulted from this incident. Further, the substituted juror was accepted by appellants when seated as an alternate. A party to a lawsuit has no vested right to any particular juror; the right of challenge is the right to exclude incompetent jurors, not to include particular persons who may be competent. *United States v. Chapman,* 158 F.2d 417 (10th Cir. 1947). A litigant has no vested right to keep a particular juror on the panel. *United States v. Rodriguez,* 459 F.2d 983 (9th Cir. 1972), *cert. denied,* 409 U.S. 865, 93 S.Ct. 158, 34 L.Ed.2d 113 (1972). "[U]nless it is shown otherwise, the error of the court, if there be error, in discharging or excusing a qualified juror, is not prejudicial or reversible error." *Chapman, supra,* at 419. Appellants have failed to show prejudice or abuse of discretion in the trial court's action and hence no error is established with respect to appellants' first proposition.

2. *Qualified Privilege.*

Appellants contend that the trial judge erred in holding that appellee is entitled to a qualified privilege in libel actions. The trial judge instructed that appellee is protected by a qualified privilege in this lawsuit and that, accordingly, it was necessary for appellants to prove malice. Appellants contend that this instruction was erroneous.

Appellants admit that the question whether a qualified privilege protects credit reporting agencies in libel actions has not been decided in New Mexico. Appellee argues that because it is an undecided question of state law, this court must accept the trial judge's decision about it, absent a showing that his decision was clearly erroneous. This circuit has repeatedly honored the rule that "Absent a showing that the trial judge's view of state law is clearly erroneous, the appellate court will defer to the trial judge, where the local courts have not ruled on the question." *Brennan v. University of Kansas,* 451 F.2d 1287, 1291 (10th Cir. 1971); *Wells v. Colorado College,* 478 F.2d 158 (10th Cir. 1973); *Binkley v. Manufacturers Life Ins. Co.,* 471 F.2d 889 (10th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973). We have also said that the determination of the resident federal judge "carries extraordinary persuasive force on appeal where there are no state decisions on point or none which provide a clear precedent." *DeBoer Construction, Inc. v. Reliance Insurance Co.,* 540 F.2d 486 (10th Cir. 1976); *Land v. Roper Corp.,* 531 F.2d 445, 448 (10th Cir. 1976); *Stevens v. Barnard,* 512 F.2d 876, 880 (10th Cir. 1975).** In this case we have not been cited to any state decisions in point.

The trial judge held that New Mexico would, if given the opportunity to consider the matter, extend the qualified privilege in libel actions to credit reporting agencies. Appellants cite this court to several cases in other jurisdictions where the qualified privilege has not been so extended, but they admit that the majority view favors the privilege. They say there is a trend toward denying the privilege, but in support of this proposition they cite only cases applying the law of Georgia and Idaho, jurisdictions which have long refused the privilege to credit reporting agencies, and a recent decision by a lower Florida court which departs from the rule established by the Florida Supreme Court. They also argue that the enactment of the federal Fair Credit Re-

porting Act shows a trend toward holding credit reporting agencies liable even without a showing of malice, but appellants do not argue that the Act applies to them or that any court has relied on the Act as authority for denying a qualified privilege in cases such as this one. Appellants also contend that their view represents a better rule of law, but they do not show that the courts of New Mexico would adopt their view or would utilize the statute or cases in the ways urged by appellants.

On the contrary, we note that New Mexico has recently recognized the qualified privilege in a number of situations, some of which are directly analogous with the circumstances here. In *Salazar v. Bjork,* 85 N.M. 94, 509 P.2d 569 (1973) the Supreme Court of New Mexico recognized that a qualified privilege protected a private consulting firm which had contracted with a state agency to prepare personnel evaluations on agency employees and which had been sued in defamation by several of the employees upon whom reports had been submitted. And in *Mahona-Jojanto, Inc., N.S.L. v. Bank of New Mexico,* 79 N.M. 293, 442 P.2d 783 (1968) the New Mexico Supreme Court extended the privilege to a bank which was sued in defamation by a disappointed loan applicant after the bank sent the Small Business Administration a copy of the letter advising that the loan application had been denied.

We find no reason to disturb the trial court's decision on this undecided question of state law.

### 3. Negligence.

Appellants contend that the facts alleged support a cause of action in negligence as well as in libel, and that, accordingly, it was error for the trial judge to refuse to instruct on the law of negligence. Appellants' arguments in support of their position on this point are similar in many respects to the arguments they advanced opposing the trial court's grant of a qualified privilege. The gist of appellants' theory here, as there,

---

** For a discussion of these views see *Binkley, supra,* at 893 and *Land, supra,* at 448; *cf.*

*Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 n. 10 (1976).

is that appellants may succeed in this action without proving malice. Here appellants reach the result by asserting that their allegations of false and injurious publication make out a claim in negligence.

Again appellants raise a question which apparently has not been presented to the Supreme Court of New Mexico, and again this court must defer to the ruling of the trial judge. Appellants have not shown that any jurisdiction has permitted a negligence claim on such facts. Appellants' argument is based largely on their view of what the law ought to be, not on what the law is or would be in New Mexico.

■ In their brief appellants urge that the negligence principles of the federal Fair Credit Reporting Act should be applied in this case, although they admit that the act covers only consumers and that it does not apply to appellants. Appellants make no showing that a New Mexico court would extend the protective principles of the Fair Credit Reporting Act to appellants. Indeed, the only New Mexico authority cited by appellants is a New Mexico statute dealing with defamation by radio and television. The statute provides:

> The owner, licensee or operator of a visual or sound radio broadcasting station or network of stations, and the agents or employees of any such owner, licensee or operator, shall not be liable for any damages for any defamatory statement published or uttered in or as a part of a visual or sound radio broadcast, *by one other than such owner,* licensee, or operator, or agent or employee thereof, unless it shall be alleged and proved by the complaining party, that such owner, licensee, operator or such agent or employee, has failed to exercise due care to prevent the publication or utterance of such statement in such broadcast. Provided, however, the exercise of due care shall be construed to include a bona fide compliance with any federal law, or the regulation of any federal regulatory agency, including those laws and regulations fixing the rates that may be charged for use of such facilities for visu-

al or sound broadcasts. N.M.Stat.Ann. § 40–27–35 (1953). (Emphasis added.)

Appellants assert that this statute "recognized the negligence doctrine in regard to radio and television broadcasts." They further assert that in *Reed v. Melnick,* 81 N.M. 608, 471 P.2d 178 (1969) the doctrine was extended to the press. Appellants' interpretation is untenable. This statute does not purport to divest broadcast media owners of their qualified privilege in libel actions; it does not purport to change the rule that proof of malice is required before those having a qualified privilege may be held responsible for defamation. Rather, the statute deals with the liability of the owner of a broadcast media facility for defamatory broadcasts made by *unauthorized persons.* It absolves the owner from liability if he has used due care in preventing broadcasts by such persons. Neither the statute nor the case may be cited for the proposition that New Mexico requires only a showing of negligence in a defamation action against owners and employees of broadcast media facilities for their defamatory statements.

### 4. *Malice.*

■ Appellants finally contend that the trial judge erroneously instructed as to the proof required to overcome a qualified privilege in a libel action in New Mexico. Again it is the gist of appellants' argument that the proof necessary in this action is proof of negligence, not proof of malice. Here appellants contend that the trial court erred because he instructed that actual malice must be proved. Appellants contend that "a due care standard or negligence standard should be applied to overcome any qualified privilege available" to appellee.

Appellee preliminarily argues that this issue was not properly preserved for appeal because appellants failed to make necessary objections below. However, we find that appellants did make known to the district judge their objection to the content as well as to the fact of his instruction on malice. The matter is properly preserved for review.

Appellee further argues that malice is required by New Mexico law and that in any event the trial court's instructions were in conformity with the New Mexico cases. Appellee also argues that this fourth proposition of error, like the previous two, raises an undecided question of state law, namely, what proof is necessary to overcome the qualified privilege extended to a credit reporting agency.

Certainly this specific question has not previously arisen in New Mexico, since the New Mexico courts have yet to rule that such agencies are in fact entitled to the qualified privilege. For the reasons given above, to the extent that this issue is novel in New Mexico, the trial court's decision must stand. Appellants contend that a different test is espoused in the Third Circuit and in Illinois, but appellants show the court no reason to believe that it was clearly erroneous for the trial judge to find that New Mexico would not adopt a negligence test. Nor are appellants' citations to New Mexico authority persuasive. As noted above, the New Mexico statute relied upon by appellants is not susceptible to the interpretation they urge, and does not show that the courts of New Mexico would permit a showing of negligence to overcome the qualified privilege in cases like this one. Appellants also argue that a recent article in the New Mexico Law Review, Walterscheid, 'With Malice Toward One,' 4 N.M.L. Rev. 37, 47 (1973), suggests that in New Mexico the "actual malice" test would not be used as to credit reporting agencies. Actually the quoted paragraph does not deal with New Mexico law; it is concerned only with whether such credit reporting agencies are entitled to first amendment protection (with its concomitant requirement of actual malice). Appellee here does not claim first amendment protection. As to state law, the author views it as being "in a state of limbo" 4 N.M.L.Rev. 37, 48.

In any event, appellants have not demonstrated that the instructions were erroneous as to qualified privilege. Professor Prosser says that "the great majority" of American courts have held that credit reporting agen-

cies "have a qualified privilege" and that "[m]ere negligence . . . is not enough to defeat the privilege." W. Prosser, Law of Torts § 115, at 790 n.30 (4th ed. 1970). New Mexico law is not contrary. In *Colbert v. Journal Publishing Co.,* 19 N.M. 156, 142 P. 146 (1914) the New Mexico Supreme Court held that

[a]ctual malice or malice in fact, sometimes denominated as express malice, implies personal hatred or ill will towards the plaintiff, or wanton disregard of the civil obligations of the defendant toward the plaintiff. 142 P. at 149.

Later, in *Ward v. Ares,* 29 N.M. 418, 223 P. 766 (1924), the Supreme Court of New Mexico noted that

[t]he books say that a qualified privilege, such as that contended for here, does not give absolute immunity from responsibility for libelous words, but has the effect merely of taking away from the libelous language the presumption of malice in their publication, and casts upon the plaintiff the burden of proving actual malice. 223 P. at 767.

The court in *Ward v. Ares* went on to hold that the question of malice should have been submitted to the jury and outlined the test to be applied by the jury. The court said

[the case] should have been submitted to them to decide whether it was an honest report, made in good faith, justified by the information which the defendant had obtained, and with a reasonable purpose of protecting the rights and interests of the party in whose behalf he had acted; or whether, on the other hand, it was made with a purpose wrongfully to defame the plaintiff. 223 P. at 769.

See also *Mahona-Jojanto, supra* and *Salazar, supra.*

The instructions given by the trial court in this case were in accord with New Mexico law. The trial judge instructed the jury that

There exists in the law a qualified privilege for publications such as the Dun &

Bradstreet reports involved in this action. For liability to attach to the defendant for a publication, there must have been more than mere negligence in the investigation or publication of the report. Before either plaintiff can recover, you must find that the reports were erroneous, and also that the defendant's actions in publishing them were malicious.

You are instructed that you may find the defendant was actuated by malice if, in issuing the reports on Gibson Products Company of Arizona or the later reports on Gibson Products Company of Alamogordo, the defendant acted not in good faith, but in bad faith towards the plaintiff, with an intent to injure the plaintiff, or in a willful, wanton and reckless disregard of the rights and interests of the plaintiff.

When I use the expression "willful and wanton conduct," I mean a course of action which shows actual or deliberate intention to harm, or which, if not intentional, shows an utter indifference to, or conscious disregard for the rights of others.

If you find that a publication was false and was disseminated by defendant with malice, as that term has been defined to you, then the conditional privilege is abused and not applicable, and you would find for the plaintiff.

These instructions with adequacy announce the law of New Mexico with respect to the proof necessary to overcome a qualified privilege in a libel action.

AFFIRMED.