William C. FARRELL, a/k/a Suli Abdullah, Appellant,

v.

UNITED STATES, Appellee.

No. 12051.

District of Columbia Court of Appeals.

Argued Feb. 14, 1978.

Decided Aug. 21, 1978.

Laban L. B. Chang, Law Student Counsel, L.S. No. 1787, with whom Michael E. Geltner, Washington, D. C., Supervising Atty., appointed by this court, was on the brief, for appellant.

William J. Hardy, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER, Associate Judge, and PRYOR, Associate Judge, Superior Court of the District of Columbia.*

NEWMAN, Chief Judge:

Tried by a jury on a felony indictment alleging destruction of private property valued in excess of $200.00, appellant was convicted of the lesser-included misdemeanor of destruction of private property valued at less than $200.00. See D.C.Code 1973, § 22–403. As his principal contention on appeal appellant alleges that the trial court violated his Sixth Amendment right to counsel by failing to conduct sufficient inquiry into his pretrial claim of ineffective assistance of counsel before it denied his motion to change counsel. We agree with appellant's assertion and reverse.[1]

## I

On the morning of February 3, 1976, appellant entered the office of Dr. Michael W. Dennis and Dr. Norman H. Horowitz at 2141 K St., N.W. The chief prosecution witness, Mrs. Neva J. Peters, a nurse and general manager of the office, testified that appellant asked to see Dr. Dennis but had scheduled no appointment. She stated that she told him he could not see Dr. Dennis until he had completed his appointments with the other scheduled patients. Appellant entered the waiting room and remained there for approximately one hour, in her estimation. According to Mrs. Peters, appellant then picked up an ashtray and began cursing her because of the delay in seeing Dr. Dennis. She immediately shut the window to the nurses' station. Appellant picked up a potted plant and threw it

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. After the trial court's refusal to appoint new counsel for appellant, he elected to conduct his own defense. Appellant additionally asserts on appeal that the trial court's order prohibiting him from interviewing government witnesses abridged his Sixth Amendment right of effective self-representation. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and Gregory v. United States, 125 U.S. App.D.C. 140, 142–44, 369 F.2d 185, 187–89 (1966). Since we reverse appellant's conviction on the basis of the violation of his Sixth Amendment right to counsel, we find it unnecessary to address this issue.

against a wall in the waiting room. She left the station to summon Dr. Dennis. As they returned, she saw a table shatter the glass window of her nurses' station. When she entered the station, she stated she saw appellant replacing the table. However, she did not see appellant throw anything. She saw no one else in the waiting room at that time. Appellant then left the office. The government also called as a witness a representative of the company which repaired the broken window at Dr. Dennis' office; he testified that the total repair bill amounted to $211.18.

Proceeding *pro se*, appellant presented one defense witness, Officer Webb, the investigating officer in the case, and then rested his case without testifying. He made an effort at presenting a closing argument during which he sought to recount his version of the events. After sustaining a number of proper objections by the government, the trial court suggested that appellant testify on his own behalf. Appellant testified that subsequent to his referral to Dr. Dennis by the Washington Hospital Center, he called Mrs. Peters and made an appointment to see Dr. Dennis on the morning of February 3, 1976. When he arrived at the office, he stated that he waited for about an hour and a half. During that time the only other patient who had been present in the waiting room left. According to appellant, he continued to wait, and was told to wait a few minutes longer when he asked Mrs. Peters when he could see the doctor. He then waited another hour. Two other patients entered the office; they were admitted to see the doctor without having to wait. When he asked Mrs. Peters why other patients were ushered in to see the doctor while he was kept waiting, appellant testified, she replied that Dr. Dennis had told her he did not wish to see Mr. Farrell and wanted him to leave. She tried to shut the glass window of the nurses' station "in his face," and he put his hand to the window to try to stop her. Appellant stated that the glass shattered when Mrs. Peters closed the window. She then went to the inner office to summon Dr. Dennis.

II

Approximately two days before the commencement of trial, appellant's court-appointed counsel informed the trial court, on appellant's behalf, that appellant doubted counsel's ability to represent him effectively and therefore requested the appointment of substitute counsel. The court summarily denied appellant's motion on the ground that due to the tardiness of the motion and the imminence of trial, new counsel, if appointed, would have insufficient time to prepare for appellant's representation.

Before the start of trial, appellant's counsel renewed the motion for appointment of substitute counsel for the same reasons as had been previously asserted. The trial court denied this request, again stating that there would be insufficient time for adequate preparation by new counsel. Defense counsel then declined to announce that he was ready for trial because appellant refused to communicate with him about the facts of the case.

During voir dire of the jury array, appellant himself addressed the court as follows:

THE DEFENDANT: Your Honor, I would like to say something.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Yes, sir.

MR. FARRELL: I would like to say that I am not satisfied with my lawyer and I would like to have another lawyer.

THE COURT: That request was denied previously. It will be denied at this time.

MR. FARRELL: Okay. I would like to represent myself.

At that point the court interrupted the voir dire of the jury array and conducted a hearing out of the presence of the panel on appellant's request as follows:

THE COURT: . . . Mr. Farrell, you have asked the Court to permit you to be your own lawyer, because you are not satisfied with [defense counsel]. At the late date when it was made known to this judge that you did not want [defense counsel] to be your lawyer, it was too late to appoint a

new lawyer to be prepared to represent you in this case. [The court informed appellant of the charge against him and of his right to be represented by counsel.] [The Constitution] . . . gives you the right to have one who is competent and who prepares himself for trial and who does an adequate job, as is expected of a lawyer in representing you.

. . . . .

Now, again I repeat to you that it is not a matter of you selecting another lawyer at this juncture. It is a matter of whether or not you can show me that [defense counsel] is not capable of being your lawyer, or in the alternative if you really want to represent yourself then show me that you voluntarily and intelligently waive your right to a lawyer.

Do you understand what I said about your right to a lawyer?

MR. FARRELL: Yes, sir.

THE COURT: Do you understand what I said about your right to waive a lawyer if you want to represent yourself, that you must intelligently do so?

\* \* \* \* \* \*

MR. FARRELL: Yes.

THE COURT: What are your objections to the lawyer that has been appointed to you by another judge of this court, . . who says that he is prepared to go to trial in this case?

MR. FARRELL: Well, Your Honor, this case has been up for a year. [Defense counsel] hasn't done anything sufficient in the case as to go find out the property, the value of the property, and to get some witnesses or anything. Hasn't been [sic] anything been done. He comes to talk to me about it the last couple of days before I go to court. I don't feel that he knows enough about the case to represent me properly.

THE COURT: Let me ask him some questions in your presence.

\* \* \* \* \* \*

THE COURT: . . . I was going down the same list of questions asked of you at status hearing . . ..

\* \* \* \* \* \*

THE COURT: I don't call upon you to yield up any confidential communication.

The first question is [sic] that I ask of you is whether you have followed the discovery practices of lawyers, defense lawyers, with the U.S. Attorney's office?

[DEFENSE COUNSEL]: I have, sir.

THE COURT: Are you satisfied that the U.S. Attorney has given you all the discovery that you would feel that you are entitled to in this type of a case?

[DEFENSE COUNSEL]: I have.

THE COURT: The second is are there any statements that are involved which would require suppression under the Miranda doctrine?

[DEFENSE COUNSEL]: Your Honor, I have learned of a statement which was made by my client at the time of his arrest. However, a determination was made not to move to suppress that statement inasmuch as the admission of that statement was not inconsistent with my understanding of our defense.

THE COURT: That is a legal judgment, and that shows that you have evaluated that point.

The next is, is there any issue of identification?

[DEFENSE COUNSEL]: Once again, Your Honor, throughout my preparation in this case, I understood there was not. And speaking to specifics, the secretary and the doctor reported the name of the individual who they believed to be involved in this case by name to the police department. I have learned today from Mr. Martin that there may be an identification issue in the trial, but that it is not the type of issue that may be raised in a pretrial motion to suppress identification. There were no pretrial identification procedures.

THE COURT: All right, sir. Well, there is always an issue of fact as to whether or not the defendant is the person who com-

mitted the crime, and that's part of the government's burden.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: All right. Now, is there any alibi asserted by your client?

[DEFENSE COUNSEL]: No, sir.

THE COURT: The question of insanity is one which the Court has already examined and there is in the record of this proceedings a report from the forensic physician, Doctor Maglagod (phonetic), who reports the defendant in his opinion is competent for trial and capable of forming a factual and rational understanding of the proceedings against him, and of properly assisting counsel in the preparation of his defense.

Now, do you know of any insanity issue the Court ought to examine other than the fact your client doesn't want to cooperate with you?

[DEFENSE COUNSEL]: No, sir.

THE COURT: All right, sir. Now, your client has spoken of you as having not looked up witnesses or evaluated the property allegedly [sic] to have been damaged.

Now, I presume since you had discovery that you would have knowledge of witnesses?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Are there any witnesses that you foresee that would be of some assistance to you in your defense that you have not interviewed?

[DEFENSE COUNSEL]: No.

THE COURT: The government has the burden of proving the value of the property. Do you know of any matter with regard to investigating the damage, amount of damage, that would be helpful in the defense?

[DEFENSE COUNSEL]: At this time no, Your Honor.

THE COURT: All right, sir. How long have you been practicing law in the Superior Court?

[DEFENSE COUNSEL]: A little over two years.

THE COURT: How many cases have you defended?

[DEFENSE COUNSEL]: I would imagine 125 or so.

\* \* \* \* \* \*

THE COURT: [Mr. Farrell,] [d]o you have any other objections to . . . your attorney other than those you already stated?

MR. FARRELL: Yes, sir. I feel that he should have made some motions about this being dismissed. None of these things have been done.

\* \* \* \* \* \*

THE COURT: . . . You have not yet told me anything that would be a subject of a motion.

\* \* \* \* \* \*

THE COURT: Do you wish to waive the right of having Mr. _____, your appointed attorney, sit with you and represent you?

MR. FARRELL: Yes, sir.

THE COURT: Do you do so voluntarily?

MR. FARRELL: Yes, sir.

\* \* \* \* \* \*

THE COURT: My . . . question is whether or not you want [defense counsel] available in case you change your mind and want to ask him a question?

MR. FARRELL: Yes, sir. That's, you know, provided I can't get another lawyer.

THE COURT: Well, I have ruled on that.

\* \* \* \* \* \*

At the conclusion of the hearing, the court made the following ruling:

THE COURT: The Court, based upon the answers given by Mr. Farrell, the medical report by Doctor Madlagod of the forensic division of this court, and the representations of [defense counsel], the Court finds that the defendant is competent to go forward in this case, that he has an understanding of his right to counsel to defend as provided by the 6th Amendment of the Constitution, that he has knowingly and intelligently waived his right to have his court appointed attorney, that there is no showing that

[defense counsel] is not capable of giving adequate representation in this case, or that he is not prepared. The Court will grant the motion of Mr. Farrell to permit him to represent himself with the proviso, with the understanding that [defense counsel] will remain seated to the side in case Mr. Farrell wants to consult with him or call him back into the case.

## III

Appellant argues that the trial court's failure to conduct a *timely and adequate* inquiry into his pretrial claim of ineffective assistance of counsel afforded a constitutionally inadequate basis, under the Sixth Amendment, for the denial of his pretrial motion to change counsel—thereby forcing him to proceed with allegedly ineffective counsel or with no counsel at all. Thus, in the case at bar, we are confronted with the same issue that was the subject of our recent holding in *Monroe v. United States*, D.C.App., 389 A.2d 811 (1978)—the trial court's duty of inquiry when presented with an accused's assertion of a pretrial claim of ineffective assistance of counsel.

*Monroe* involved a similar factual situation. In that case, before the start of trial, the appellant had alleged to the trial court that his court-appointed defense counsel was not prepared to provide him with effective assistance at trial due to the lack of pretrial preparation. He claimed that his attorney had failed to investigate the case adequately or to communicate with him. He therefore requested substitute counsel. His motion was summarily denied by the trial court without any attempt by the court to ascertain the basis of appellant's claim. We held that the trial court thereby committed error.

In *Monroe*, we stated that the right to counsel guaranteed by the Sixth Amendment is no less than "the right to the *effective* assistance of counsel 'within the range of competence demanded of attorneys in criminal cases.' " *Id.*, at 816, citing *McMann v. Richardson*, 397 U.S. 759, 771 & n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Commensurate with the fundamental na-

ture of this essential guarantee, we adopted a comprehensive standard of performance, that of *McMann v. Richardson*—"i. e., that effective representation by counsel is that which is 'within the range of competence demanded of attorneys in criminal cases' "—as the degree of proficiency which defense counsel must demonstrate at the pretrial stage of a criminal proceeding. *Monroe, supra*, at 819, citing *McMann v. Richardson, supra.* In enunciating this pretrial standard of competency, we stressed the central role that adequate pretrial preparation plays in the presentation of an effective defense effort. *Monroe, supra*, at 817, 819. We concluded that pretrial allegations of the inability of counsel to render effective assistance at trial due to lack of preparation raise a Sixth Amendment claim. *Id.*, slip op. at 820. Hence, we held that when an accused alleges pretrial that defense counsel is unable to render reasonably effective assistance, due to his lack of preparation or other substantial reason, the Sixth Amendment imposes an affirmative duty on the trial court to conduct an inquiry into the complaint. *Id.*, slip op. at 820. Such inquiry must be of record as must be the findings of fact based thereon. *Id.*, slip op. at 821.

In so holding, we refrained from articulating the precise form which the requisite inquiry must take. Rather, because the nature of the inquiry turns on the specific circumstances presented in each individual case, we committed the substance and scope of the inquiry to the sound discretion of the trial court. *Id.*, slip op. at 821. However, we did direct that in exercising this discretion the trial courts should be guided by the specific standards of defense representation set forth in *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.), *cert. denied*, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). *Monroe, supra*, slip op. at 821. Although we did not delineate the exact contours of the type of inquiry that would satisfy the commands of the Sixth Amendment, we did state that such an inquiry must be sufficiently specific and thorough to elucidate counsel's degree of compliance with the

suggested criteria of professional competence, *id.*, slip op. at 821, and thus "the truth and scope of the defendant's allegations." *Id.*, at 820.

In the case *sub judice*, as in *Monroe*, the appellant challenged defense counsel's ability to render the effective assistance of counsel guaranteed by the Sixth Amendment. On two occasions—before trial and at the outset of trial—appellant's defense counsel moved for assignment of new counsel, asserting that appellant's doubts as to counsel's capacity to represent him adequately impeded the communication and cooperation essential to the attorney-client relationship. The trial court denied these motions without making any inquiry of the defendant or otherwise. Then appellant himself requested new counsel; this motion was also denied without inquiry.

When appellant challenged defense counsel's capacity for effective representation—thereby asserting a substantial Sixth Amendment claim—it was incumbent upon the trial court to investigate the substance of appellant's complaint *at that juncture.* The court failed to comply with this responsibility. It conducted no inquiry into the matter. Thus, at the point when the court denied appellant's motions, it had *no* data from which to assess the validity of appellant's charges or to make an informed judgment as to the necessity of new counsel.

The trial court's stated reason for denying appellant's requests was that the trial was ready to start and consequently new counsel would have insufficient time to prepare. The trial court by such response elevated considerations of economy and expedience above an appropriate regard for the effectuation of the Sixth Amendment counsel guarantee. We reiterate what we said in *Monroe*—in balancing the fundamental nature of the right to counsel against the legitimate concern for the expedition of the trial process, the Sixth Amendment interest at stake carries greater weight.

■ By denying appellant's motions in the fashion in which it did—without having conducted any inquiry—the court committed error. It was only after the trial court had denied each of appellant's motions that it engaged in any inquiry into appellant's claim. However, the nature of the inquiry belatedly conducted does not mitigate the error.

Appellant's main contentions with regard to the inadequacies of defense counsel were that: (1) defense counsel had not interviewed any witnesses; (2) had not investigated the specifics of the charge against him (*e. g.*, determination of property damage); and (3) had not seen or consulted him until a few days before trial. However, the inquiry here conducted revealed only that: (1) defense counsel had gone through the normal discovery procedures with the U.S. Attorney's office; (2) no pretrial motions had been made; and (3) appellant did not rely on an alibi defense. The inquiry here never addressed, and thus never contradicted or substantiated, the specifics of appellant's complaint. The question posed by the trial court as to whether counsel had interviewed any witnesses did not elicit from counsel whether he had actually sought interviews with the complaining witnesses or any other potential witnesses (*e. g.*, other patients in the office that morning who may have witnessed the incident itself or the events leading up to it).[2] Again, the trial court's question as to whether counsel had investigated the amount of damage to the property demonstrated little in this respect. It too failed to elicit from counsel whether he had done any investigation to determine the value of the damaged property and sought expert opinion with regard thereto. Finally, the record does not show whether or not counsel consulted with appellant or the time spent in such consultations.

■ "This case graphically illustrates that a mere routine inquiry—the asking of

---

**2.** The government's case was wholly dependent on the testimony of Mrs. Peters, the key government witness. The result in this case turned on the credibility of appellant's testimo-

ny pitted squarely against that of Mrs. Peters. Hence, investigation as to other potential witnesses, who might have resolved this direct conflict in testimony, was especially important.

several standard questions . . .—may leave a judge entirely unaware of the facts essential to an informed decision [as to defense counsel's preparedness for trial]." *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). The oblique nature of the trial court's questions and the brevity of defense counsel's replies demonstrate little if anything about defense counsel's actual preparation for trial. Inquiry of this type yields an insubstantial basis for a determination of whether a counsel's pretrial representation was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson, supra.* Thus, there was no basis for the trial court's finding that defense counsel was prepared to provide appellant with the effective representation at trial to which he was entitled under the Sixth Amendment.

The trial court's denial of appellant's motions to change counsel without any inquiry, and the deficient nature of the inquiry which it did subsequently conduct into the level of counsel's preparedness, failed to manifest the requisite solicitude for an accused's essential right to have the effective assistance of counsel guaranteed by the Sixth Amendment.[3] By such actions, the trial court effectively placed appellant in a dilemma of constitutional magnitude, for the court put appellant in the position of choosing between proceeding to trial with counsel who he contended was unprepared—a contention unrebutted of record because of the trial court's failure to properly inquire—or proceeding *pro se.* This the trial court may not do. If counsel

was unprepared to give effective representation at trial, appellant was constitutionally entitled to the appointment of new counsel.[4] Finding that the rulings of the trial court deprived appellant of his Sixth Amendment right to counsel, we hold that appellant's conviction cannot stand.

*Reversed.*

---

**3.** We note that the necessity for strict judicial observance of the Sixth Amendment duty of inquiry is especially apparent in situations, such as the one that prevailed here, in which the circumstances of the offense (coupled with the fact that the trial court deemed it necessary to have a psychiatric competency evaluation of appellant made) suggest that the defendant may be experiencing some type of psychiatric disorder. *Cf. Hawkins v. United States,* D.C. App., 385 A.2d 744, 747 (1978) (waiver of Sixth Amendment right to jury trial invalidated due to lack of sufficient inquiry of defendant in similar circumstances).

**4.** We thus reject the government's contention that there was a valid waiver of counsel under *Faretta v. California, supra,* and that the trial court's failure to properly inquire was thereby rendered harmless. *See United States ex rel. Spencer v. Warden,* 545 F.2d 21 (7th Cir. 1976); *Ford v. Wainwright,* 526 F.2d 919 (5th Cir. 1976); *United States ex rel. Martinez v. Thomas,* 526 F.2d 750 (2d Cir. 1975); *United States v. Woods,* 487 F.2d 1218 (5th Cir. 1973); *United States v. Calabro,* 467 F.2d 973 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973).