James B. FIELDS, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1153.

District of Columbia Court of Appeals.

Argued Oct. 26, 1982.

Decided May 11, 1983.

Richard S. McMillin, Washington, D.C., with whom Stephen G. Milliken, Washington, D.C., was on the briefs, for appellant.

Katherine Winfree, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and John R. Fisher, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, PRYOR and BELSON, Associate Judges.

BELSON, Associate Judge:

On October 6, 1976, a jury found appellant guilty of one count of armed robbery, D.C.Code § 22–2901, –3202 (1973), and two counts of assault with a dangerous weapon, *id.* –502. The following January appellant was sentenced to consecutive prison terms of eight to thirty years for armed robbery, and one to five years for each assault count. Appellant thereafter noted an appeal in which he challenged only the legality of his sentence, and in *Fields v. United States,* 396 A.2d 990 (D.C.1979) (per curiam), we ruled that appellant improperly had been sentenced as a recidivist. On remand appellant was resentenced to the same periods of incarceration. Appellant began serving his sentence in January 1980.

On May 22, 1981, appellant filed a motion to vacate pursuant to D.C.Code § 23–110 (1981), alleging ineffective assistance of counsel. On August 20, 1981, the trial court

denied the motion, and this appeal followed. We affirm.

█ The gravamen of appellant's argument on this collateral appeal is that the trial court failed to conduct the hearing that we mandated in *Monroe v. United States,* 389 A.2d 811 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), and *Farrell v. United States,* 391 A.2d 755 (D.C.1978), for addressing pretrial claims of ineffective assistance of counsel. Under what has become known as the *Monroe/Farrell* rule, when an accused raises pretrial claims of ineffective assistance the court must conduct an on-the-record hearing to determine whether counsel is providing representation within the range of competence demanded in criminal cases. *Monroe, supra,* 389 A.2d at 819, 821; *Farrell, supra,* 391 A.2d at 760–61. In addition, the court must make on-the-record findings sufficient to permit meaningful appellate review on the issue of the ability and preparedness of counsel to render effective assistance under the prevailing circumstances. *Id.* It is undisputed that the trial court failed to follow the *Monroe/Farrell* procedure when, before trial, appellant charged that his attorney's preparation was deficient.[1]

*Monroe,* of course, was not decided until July 18, 1978, nearly two years after appellant's trial.[2] Although appellant's direct appeal was pending at that time, appellant did not raise the ineffective assistance issue, and thus the question was not before us when we disposed of appellant's direct appeal. Appellant nevertheless claims entitlement to the *Monroe/Farrell* procedure on two grounds. First, he contends that *Monroe* did not articulate a new constitutional doctrine, and hence no retroactivity question confronts us. Under this theory, if we were to rule in appellant's favor we would not be giving retroactive effect to a new constitutional doctrine, but simply finding that the trial court failed to adhere to 1976 standards for handling pretrial ineffective assistance claims.

Under his second theory appellant argues that even if *Monroe/Farrell* did announce a new constitutional doctrine, he is entitled to the benefit of that doctrine because his conviction was not yet final when *Monroe* was decided.

The government's counterarguments center upon the fact that this is a collateral appeal. First, the government insists that the *Monroe/Farrell* rule does not represent a new constitutional doctrine. Rather, the government maintains that in *Monroe* and *Farrell* we simply promulgated a rule pursuant to our supervisory authority over the administration of justice in the Superior Court. Because under this theory the right to a *Monroe/Farrell* hearing is not constitutionally required, the government argues that a motion premised upon failure to comply with *Monroe/Farrell* is not cognizable under § 23–110(a)(1).[3]

---

1. The trial court did, however, consider appellant's pretrial complaints regarding his attorney's preparation, and explained on the record that, based upon the court's prior experience with trial counsel, the court knew that counsel always was prepared. The gist of appellant's Sixth Amendment claim, then, is not that the court fell short of its generalized duty to inquire into claims of ineffective assistance. Nor does appellant make any specific claims with respect to his counsel's lack of preparation. Rather, his sole complaint is that the court failed to conduct precisely the type of hearing required under *Monroe/Farrell.*

2. *Appellant* filed his main brief on July 14, 1978, four days before *Monroe* was decided. He filed his reply brief approximately six weeks later, on August 29, 1978. *Farrell* was decided on August 21, 1978. Appellant's direct appeal was decided January 12, 1979.

3. Section 23–110(a) states:

A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.

Alternatively, the government maintains that even if the *Monroe/Farrell* rule did announce a new constitutional doctrine and, therefore, claims such as appellant's may be raised on an appeal under § 23–110(a)(1), appellant is not entitled to retroactive application of a new constitutional doctrine because his is a collateral appeal. Under the government's alternative argument, therefore, whether an appeal was direct or collateral would be the decisive factor in determining whether to accord retroactive effect to a newly announced constitutional doctrine.

I

The retroactivity issue, generally speaking, resolves itself into the question of whether a case that announces a new doctrine should be given: 1) purely prospective effect (governing neither the parties before the court nor previous or pending cases); 2) nonretroactive effect (governing future cases, as well as the litigants at bar, but not previous or pending cases), or 3) retroactive effect (governing litigants at bar and appeals pending when the new doctrine was announced).[4] *See generally* Beytagh, *Ten Years of Non-Retroactivity: A Critique and a Proposal,* 61 VA.L.REV. 1557 n. 2 (1975). In this appeal we are concerned with only the third classification: that is, whether the *Monroe/Farrell* rule should be applied retroactively to appellant, whose direct appeal was pending when the rule was announced. Before turning to the issue of whether the *Monroe/Farrell* rule should be applied retroactively, however, it is necessary to address appellant's first contention: whether, in fact, a true retroactivity question exists at all.

The Supreme Court recently explained in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), that certain cases that announce rules for criminal proceedings receive full retroactive effect because they merely apply settled precedents to new and different factual situations. *See id.* 102 S.Ct. at 2587. In such cases, the Court stated, "it has been a foregone conclusion that the rule of the later case applies in the earlier case because the later decision has not in fact altered that rule in any material way." *Id.* Appellant's first theory is that the *Monroe/Farrell* rule represented such an application of established precedents to new facts, and hence no true retroactivity question confronts us. We disagree.

It is true, as appellant points out, that certain pre-*Monroe* decisions in this and other jurisdictions recognized that trial courts should conduct some type of inquiry into pretrial claims of ineffective assistance. *See, e.g., Brown v. Craven,* 424 F.2d 1166, 1169–70 (9th Cir.1970) (when trial court, *inter alia,* summarily rejected accused's pretrial claims of ineffective assistance, new trial required); *United States v. Young,* 482 F.2d 993, 995–96 (5th Cir.1973) (although trial court should have inquired into claims of ineffective assistance raised during trial, reversal not warranted when record demonstrates insubstantiality of appellant's claims); *Sawicki v. Johnson,* 475 F.2d 183, 184–85 (6th Cir.1973) (when trial court conducted no investigation into accused's pretrial claim of ineffective assistance case remanded for evidentiary hearing); *United States v. Morrissey,* 461 F.2d 666, 669–70 & n. 6 (2d Cir.1972) (when accused raised claims of ineffective assistance before and during trial, trial court's failure to inquire would constitute reversible error if record did not demonstrate insubstantiality of ap-

4. It should be noted that other meanings have been assigned to the terms "retroactive" and "prospective." For example, in *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Supreme Court gave *Miranda* and *Escobedo* prospective effect, but specified that prospective application of these cases extended only to trials begun after the decisions were announced. Similarly, in *Sto-vall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court made *Wade* and *Gilbert,* which related to the right to counsel at lineups, applicable only to lineups conducted in the absence of counsel after the date of decision. *See generally Desist v. United States,* 394 U.S. 244, 270 n. 2, 89 S.Ct. 1048, 1049 n. 2, 22 L.Ed.2d 248 (1969) (Fortas, J., dissenting); Beytagh, *supra,* at 1574–75.

pellant's claims); *Brown v. United States,* 105 U.S.App.D.C. 77, 83, 264 F.2d 363, 369 (en banc) (Burger, J., concurring) (when accused, without stating reasons, advises court of dissatisfaction with counsel, court must inquire into basis for complaints), *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959).

■■■ *Monroe* and *Farrell,* however, cannot be said merely to have applied settled precedents to a new factual situation. Although the Sixth Amendment has long been recognized as imposing a generalized duty upon trial courts to monitor the effectiveness of defense counsels' assistance at trial, *Monroe* for the first time explicitly stated what procedure trial courts in this jurisdiction should use to meet that responsibility in the context of *pretrial* ineffective assistance claims. By mandating a regularized, on-the-record inquiry into the validity of pretrial ineffective assistance claims, *Monroe* articulated a new rule that was designed to offer an alternative to the judici-

ary's more traditional post-conviction exercise of control over the quality of defense advocacy. *See Monroe, supra,* 389 A.2d at 819.[5]

## II

■■■ Turning to the government's arguments, we conclude that it is unnecessary for us to determine whether the *Monroe/Farrell* procedure is constitutionally required.[6] Even assuming that the Sixth Amendment does require such a procedure and that retroactivity might be appropriate were this a direct appeal, it is our conclusion that retroactive application of *Monroe/Farrell* would be inappropriate in this case, which comes to us on collateral appeal.

■■■ We realize that the appropriateness of retroactivity on collateral appeals is an unsettled issue that has generated considerable debate among both members of the Supreme Court[7] and commentators.[8] Indeed, *Johnson, supra,* the Court's most recent interpretation of the retroactivity

---

5. In addition, *Monroe* defined the standard by which pretrial claims of ineffective assistance should be measured. Under *Monroe,* "effective representation by counsel is that which is 'within the range of competence demanded of attorneys in criminal cases' ...." *Monroe, supra,* 389 A.2d at 819 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). This represents a different standard than that applied to post-trial claims of ineffective assistance, for which the standard is whether counsel's performance was so grossly deficient as to blot out the essence of a substantial defense. *See Angarano v. United States,* 312 A.2d 295 (D.C.1973).

6. Were we to reach that question, we would be required to pass on the applicability of the distinction Justice Fortas pointed out between court-made procedures which served to implement constitutional precepts, on the one hand, and, on the other, court rulings as to what practices are themselves constitutionally required. *See Desist, supra,* 394 U.S. at 271 & n. 3, 89 S.Ct. at 1049 & n. 3 (Fortas, J., dissenting). Our recent holding in *Matthews v. United States,* 459 A.2d 1063 (D.C.1983) suggests that the *Monroe/Farrell* procedure is not itself constitutionally required, but that it was adopted as a means of protecting a defendant's Sixth Amendment rights.

7. *Compare Hankerson v. North Carolina,* 432 U.S. 233, 247–48, 97 S.Ct. 2339, 2347, 53

L.Ed.2d 306 (1977) (Powell, J., concurring in judgment) (arguing against retroactivity for collateral appeals) *and Mackey v. United States,* 401 U.S. 667, 681–95, 91 S.Ct. 1160, 1174–81, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring and dissenting) (same) *and Desist v. United States,* 394 U.S. 244, 260–69, 89 S.Ct. 1030, 1039–44, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting) (same) *with Adams v. Illinois,* 405 U.S. 278, 287 & n. 4, 92 S.Ct. 916, 922 & n. 4, 31 L.Ed.2d 202 (1972) (Douglas, J., with Marshall, J., dissenting) (arguing that decisions should be either completely prospective or completely retroactive; no special exception should exist for collateral appeals) *and Williams v. United States,* 401 U.S. 646, 666, 91 S.Ct. 1148, 1159, 28 L.Ed.2d 388 (1971) (Marshall, J., concurring and dissenting) (arguing that same factors which dictate whether retroactivity appropriate for direct appeals should govern retroactivity determination regarding collateral appeals).

8. *See, e.g.,* Beytagh, *supra,* at 1601–04; Schwartz, *Retroactivity, Reliability and Due Process: A Reply to Professor Mishkin,* 33 U.Chi.L.Rev. 719 (1966); Mishkin, *The Supreme Court, 1964 Term—Forward: The High Court, the Great Writ and the Due Process of Time and Law,* 79 Harv.L.Rev. 56 (1965).

doctrine, serves to illustrate the problem. In *Johnson* the Court held that new decisions construing the Fourth Amendment should be applied retroactively to "all convictions not yet final" when the decisions were announced. 102 S.Ct. at 2594. Having stated this holding, however, the *Johnson* Court then expressly left open the question of the retroactive reach of newly announced Fourth Amendment rules to cases arising on collateral appeal. *Id.*[9] Without minimizing the strength of the arguments on the other side of this question, we are persuaded that when a new rule might appropriately be applied retroactively to cases "not yet final," the better approach would be to decline to extend the rule to cases arising on collateral appeal.

▪ In reaching our conclusion, we view as one of the most influential factors the limited nature of the § 23–110 motion. Section 23–110 is substantially identical to 28 U.S.C. § 2255 (1976), the statute under which prisoners convicted in federal court may challenge the legality of their sentences. *See Butler v. United States,* 388 A.2d 883, 886 & n. 5 (D.C.1978). Like its federal counterpart, § 23–110 is not designed to be a substitute for direct review. *See United States v. Frady, supra* note 9, 456 U.S. at 166, 102 S.Ct. at 1593; *United States v. Addonizio,* 442 U.S. 178, 184 & n. 10, 99 S.Ct. 2235, 2240 & n. 10, 60 L.Ed.2d 805 (1979); *Brown v. United States,* 411 A.2d 631, 632 (D.C.1980) (per curiam). Thus, courts frequently have refused to grant collateral relief for errors that would justify reversal on direct review. *See Frady, supra* 456 U.S. at 162–66, 102 S.Ct. at 1591–93; *Hill v. United States,* 368 U.S. 424, 428–29, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *Butler, supra,* 388 A.2d at 886.

▪ Such restrictions on the availability of collateral relief assume particular significance when, as here, we are asked to apply a newly announced rule retroactively on a collateral appeal. One of the purposes of collateral review, whether under 28 U.S.C. § 2255 or D.C.Code § 23–110, is to ensure that trial and appellate courts conduct their proceedings in conformity with established constitutional standards. *See, e.g., Desist, supra* note 4, 394 U.S. at 262–63, 89 S.Ct. at 1040–41 (1969) (Harlan, J., dissenting). In order to fulfill this deterrent function, it would appear unnecessary to require that courts hearing collateral appeals to apply all "new" constitutional rules retroactively. *See id.* at 263, 89 S.Ct. at 1041. Rather, courts need only apply the constitutional standards prevailing at the time the original proceeding took place. *See Mackey v. United States,* 401 U.S. 667, 686–89 & nn. 3–5, 91 S.Ct. 1160, 1176–78 & nn. 3–5, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring and dissenting); *Desist, supra,* 394 U.S. at 263, 89 S.Ct. at 1041 (Harlan, J., dissenting); *see also Hankerson v. North Carolina,* 432 U.S. 233, 247–48, 97 S.Ct. 2339, 2347, 53 L.Ed.2d 306 (1977) (Powell, J., concurring in judgment).[10]

---

**9.** The Court further qualified its holding by stating that *Johnson* governed only cases not clearly controlled by existing retroactivity precedents. *Id.*

In certain retroactivity decisions the Court has specified exactly what is required to render a conviction "final." For example, in *Linkletter v. Walker,* 381 U.S. 618, 622, 85 S.Ct. 1731, 1733, 14 L.Ed.2d 601 (1965), the Court addressed the applicability of the exclusionary rule announced in *Mapp* to state convictions that had become final before *Mapp* was announced. The Court stated: "[b]y final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in *Mapp v. Ohio.*" *Id.* at 622 n. 5, 85 S.Ct. at 1734 n. 5; *accord*

*Tehan v. United States ex rel. Shott,* 382 U.S. 406, 409 n. 3, 86 S.Ct. 459, 461 n. 3, 15 L.Ed.2d 453 (1966); *cf. United States v. Frady,* 456 U.S. 152, 164–65, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816 (1982).

**10.** Justice Harlan, the principal advocate of the approach we have adopted above, envisioned only two situations in which it might be appropriate to dispose of collateral appeals on the basis of intervening changes in constitutional interpretation. First, he believed that new substantive due process decisions, such as *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), which placed certain kinds of primary, private conduct beyond the state's power to proscribe, should be on a different footing. *See Mackey, supra,* 401 U.S.

828

An additional consideration influencing our decision is the need for finality. Although clearly not controlling in the context of postconviction relief, the principle of finality merits at least some attention when retroactivity is implicated in a collateral appeal. *Cf. Kaufman v. United States,* 394 U.S. 217, 228–29, 89 S.Ct. 1068, 1075, 22 L.Ed.2d 227 (1969). As Justice Harlan acknowledged in his separate *Mackey* opinion, allowing prisoners continually to litigate the current constitutional validity of their convictions might provide a method of correcting abuses that are now, but were not formerly, perceived as detrimental to society's interests. *See* 401 U.S. at 689, 91 S.Ct. at 1178 (Harlan, J., concurring and dissenting). Justice Harlan further observed, however, that both the criminal defendant and society have a competing interest in ensuring that at some point there will be "the certainty that comes with an end to litigation . . . ." *Id.* at 690, 91 S.Ct. at 1178. We share Justice Harlan's view that neither criminal defendants nor society as a whole would benefit from a system under which a person, in effect, would be tentatively incarcerated today, but his continued incarceration would remain subject to fresh litigation with each subsequent change in constitutional interpretation. *Cf. id.* at 691, 91 S.Ct. at 1179. We agree that in addition to imposing a substantial drain on the limited resources that society has allocated to the criminal process, such a system could well have the ironic consequence of leading to retrials that, owing to the passage of time, may be less reliable in terms of ascertaining the truth than the original trials were. *See id.*

at 692 & n. 7, 91 S.Ct. at 1180 & n. 7 (Harlan, J., concurring and dissenting) (dictum). Second, he believed that collateral relief should always be available for claims of non-observance of those procedures that are "implicit in the concept of ordered liberty." *See id.* at 693, 91 S.Ct. at 1180 (dictum) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).

11. Justice Douglas cited *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as the "most notorious" example of this phenomenon. In *Miranda:*

III

Having concluded that the *Monroe/Farrell* rule should not be applied retroactively on this collateral appeal, we briefly address appellant's one remaining contention: that he should receive the benefit of the rule because, due to the pendency of his direct appeal, his conviction was "not yet final" when the rule was announced. It is true that newly announced rules governing criminal proceedings sometimes have been applied retroactively to cases pending on direct review when the new doctrine was announced. As we have discussed, in *Johnson, supra,* the Court ruled that new interpretations of the Fourth Amendment not clearly controlled by previous retroactivity precedents should be so applied. *See* 102 S.Ct. at 2595.

Even assuming that the *Monroe/Farrell* rule might be an appropriate candidate for such treatment, however, appellant's failure to raise the Sixth Amendment issue on direct appeal undercuts any argument that he is equitably entitled to benefit from the rule. The practice of extending newly announced rules to such pending cases is designed to avoid an obvious inequity that results from nonretroactivity, the practice of applying a new rule only to cases at bar and future cases, but not to other pending cases. Nonretroactivity can result in disparate treatment for similarly situated litigants when, for example, several petitions for certiorari raise a particular issue, but review is granted in only a handful of cases,[11] or when cases involving the same

[S]ome 80 cases were presented raising the same question. We took four of them and held the rest and then disposed of each of the four applying the new procedural rule retroactively. But as respects the rest of the pending cases we denied any relief. Yet it was sheer coincidence that those precise four were chosen. Any other single case in the group or any other four would have been sufficient for our purposes.

*Desist, supra,* 394 U.S. at 255, 89 S.Ct. at 1037 (Douglas, J., dissenting) (citation omitted).

issue happen to move through the appellate process at differing speeds. *See, e.g., Johnson, supra,* 102 S.Ct. at 2591 & n. 17.

 Applying a new rule retroactively is intended to avoid unfair treatment of litigants who raise an issue, but whose cases, through no fault of their own, do not become the vehicle through which a new doctrine is announced. Because appellant does not fall within that category of litigants, we conclude that appellant is not entitled to retroactive application of *Monroe/Farrell* on the basis of the pendency of his direct appeal when the rule was announced. *Pierce v. United States,* 402 A.2d 1237 (D.C.1979), in which a division of this court sua sponte raised the *Monroe/Farrell* issue on a direct appeal does not, in our view, dictate a contrary result. *Pierce* neither relieves counsel of the obligation of framing the issues upon which review is sought nor requires the court to bring overlooked issues to the attention of counsel. Accordingly, the denial of appellant's motion is hereby

*Affirmed.*