**Gregory GATHERS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 06–CO–438.**

District of Columbia Court of Appeals.

Argued June 9, 2009.

Decided Aug. 13, 2009.

---

58. *Jeffrey, supra* note 13, 892 A.2d at 1126.

M. Elizabeth Kent, Washington, for appellant.

Stephan E. Oestreicher, Jr., Special Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Assistant United States Attorney, were on the brief, for appellee.

Before REID and KRAMER, Associate Judges, and FARRELL, Senior Judge.

KRAMER, Associate Judge:

Appellant Gregory Gathers argues that the trial court erred by rejecting his motion, filed pursuant to D.C.Code § 23–110 (2001), to vacate his conviction for first-degree premeditated murder while armed, possessing a firearm during a crime of violence or dangerous offense, and carrying a pistol without a license. Appellant argues that *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), decided after his conviction and sentence became final, applies retroactively to cases on collateral review and requires vacatur of his conviction and a new trial. We hold that *Crawford* is not applied retroactively on collateral review to cases already final, and affirm.

### I. Factual Background

Appellant Gathers was charged with first-degree premeditated murder while armed, possessing a firearm during a crime of violence or dangerous offense, and carrying a pistol without a license in connection with the June 14, 1993 shooting death of Carlton Gillis. He had a jury trial before Judge Colleen Kollar–Kotelly,

but the jury was unable to reach a verdict, resulting in a mistral.

Gathers was retried in October 1994 before Judge John Suda. At that trial evidence was presented that on June 14, 1993, Wayne Ballard drove to pick up his friend Gillis on Wahler Place in Southeast Washington. When Ballard drove to the end of the street to turn around, five or six men were standing near the end of the street, and one was sitting on a fence. On seeing Ballard's car, one of the men shouted, "Man, that's him," apparently referring to Ballard. The man that had been sitting on the fence stood up and shot at Ballard five or six times as Ballard drove past. Ballard was not hit, but Gillis was shot in the head. Ballard drove Gillis to a nearby hospital, where he died in the emergency room. At the hospital, Ballard spoke with Captain Larry Rogers, a hospital security guard, and Officer Calvin Branch of the Metropolitan Police Department about what happened. Ballard told Rogers that he knew the person who shot Gillis, but Rogers did not remember the name of the person Ballard named. Officer Calvin Branch testified that Ballard identified Gathers as the shooter. Several weeks after the shooting of Gillis, Ballard was shot and killed.[1] Accordingly, Ballard was unable to testify at trial, and his statement was introduced under the spontaneous utterance exception to the hearsay rule.[2] Ballard's statement, introduced through Branch, was the only eyewitness evidence identifying appellant as the shooter.

Gathers was convicted of all charges. His convictions were affirmed by this court in September 1997,[3] and became final in

---

1. Appellant's brother Gary Gathers was convicted of Ballard's murder.

2. Appellant objected to the admission of this evidence during a motion in limine prior to the first trial. At this, the second trial, the trial court followed the evidentiary rulings of the first. Appellant's counsel did not seek to

contest any of the first trial's evidentiary rulings, and appellant's counsel did not make any contemporaneous objection to this evidence during the second trial.

3. The excited utterance issue was raised on direct appeal as a hearsay issue. The court found that the trial court's decision to admit

December 1997, when the time for filing a petition for writ of certiorari elapsed. *See* U.S. Sup.Ct. R. 13 (petition for writ of certiorari must be filed within ninety days after entry of judgment); *Beard v. Banks,* 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) ("State convictions are final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." (citations and internal quotation marks omitted)). In January 2005, Gathers moved to vacate his convictions and sentence under D.C.Code § 23–110 (2001), arguing that the rule of *Crawford, supra,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, applies retroactively to cases on collateral review and requires vacatur and a new trial. In March 2006, Judge Lynn Leibovitz denied Appellant's motion, concluding that *Crawford* does not apply retroactively on collateral review. This appeal followed.

### III. Legal Discussion

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In 1980, the U.S. Supreme Court held that an out-of-court declaration of a witness against a criminal defendant is admissible if (1) the witness was unavailable and (2) the statement "bears adequate indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (internal quotation marks omitted). The Court noted that "[r]eliability can be inferred without more in a case where the evidence falls

within a firmly rooted hearsay exception." *Id.* Ballard's identification of Gathers fell within the excited utterance exception to the hearsay rule. Therefore, under *Roberts,* its admission did not violate the Confrontation Clause.

▮▮▮▮ In 2004, the Supreme Court overruled *Roberts* in *Crawford, supra,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, which held that out-of-court testimonial statements may not be admitted into evidence without the declarant's live in-court testimony unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine.[4] *Id.* at 59, 124 S.Ct. 1354. Appellant had no prior opportunity to cross-examine Ballard, so the admission of his out-of-court statement violated the *Crawford* rule. The question before us is whether *Crawford* is applied retroactively on collateral review.

The Supreme Court has held that a new constitutional rule of criminal procedure is not applicable on collateral review to cases that became final before the rule was announced unless the new rule (1) "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or (2) is a "watershed rule[ ] of criminal procedure" that "implicate[s] the fundamental fairness of the trial." *Teague v. Lane,* 489 U.S. 288, 311–12, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citations and internal quotation marks omitted). In *Whorton v. Bockting,* 549 U.S. 406, 409, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007), the Supreme Court held that under *Teague, Crawford* is not retroactive to cases on collateral review. The Court later clarified that while federal

---

Branch's testimony under that exception was not clearly erroneous and that there was no Confrontation Clause violation because "the hearsay properly fits within this firmly rooted exception ...." *See Gathers v. United States,* No. 95–CF–709, slip op. at 7 (D.C. Sept.18, 1997) (citing *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)).

4. The government does not contest that Ballard's statement was "testimonial" and has never argued that Ballard was killed at appellant's instigation. See note 1, *supra.*

law does not require state courts to apply *Crawford* to cases that were final when it was decided, it does not prohibit them from doing so either. *Danforth v. Minnesota,* —— U.S. ——, ——, 128 S.Ct. 1029, 1046, 169 L.Ed.2d 859 (2008). The *Teague* rule "was tailored to the unique context of federal habeas and therefore had no bearing on whether States could provide broader relief in their own postconviction proceedings than required by that opinion." *Id.* at 1039. States may give broader retroactive effect to the Supreme Court's new rules of criminal procedure where it is appropriate to do so under state law that governs retroactivity in state postconviction proceedings. *Id.* at 1046.

Appellant argues that whether *Crawford* is applied retroactively on collateral review is a question of first impression before this court, and asks us to exercise the authority reserved to states under *Danforth.* But, assuming without deciding that we are not strictly bound by the holding of *Whorton,* appellant's claim fails anyway under the retroactivity analysis we have employed in *Fields v. United States,* 466 A.2d 822 (D.C. 1983). In *Fields,* the appellant filed a collateral appeal on the ground that the trial court failed to conduct the type of hearing for addressing pretrial claims of ineffective assistance of counsel that was mandated by *Monroe v. United States,* 389 A.2d 811 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978) and *Farrell v. United States,* 391 A.2d 755 (D.C.1978). *Monroe* was decided after Fields' 1976 trial, but while his direct appeal was pending. *Fields, supra,* 466 A.2d at 824. Fields failed to raise the *Monroe* argument on direct appeal. *Id.* In *Fields,* we concluded that retroactive application of the *Monroe–Farrell* rule was inappropriate on collateral review and held that "when a new rule might appropriately be applied retroactively to cases 'not yet final,' the better approach would be to decline to extend the rule to cases arising on

collateral appeal." *Id.* at 827. We noted that "[i]n reaching our conclusion, we view as one of the most influential factors the limited nature of the § 23–110 motion .... [which] is not designed to be a substitute for direct review." *Id.* (citations omitted). We addressed the purposes of collateral review, one of which

> is to ensure that trial and appellate courts conduct their proceedings in conformity with established constitutional standards. In order to fulfill this deterrent function, it would appear unnecessary to require that courts hearing collateral appeals to apply all "new" constitutional rules retroactively. Rather, courts need only apply the constitutional standards prevailing at the time the original proceeding took place.

*Id.* (citations omitted). The need for finality is served by not applying new rules on collateral appeal, since "neither criminal defendants nor society as a whole would benefit from a system under which a person, in effect, would be tentatively incarcerated today, but his continued incarceration would remain subject to fresh litigation with each subsequent change in constitutional interpretation." *Id.* at 828 (citations omitted). "[S]uch a system could well have the ironic consequence of leading to retrials that, owing to the passage of time, may be less reliable in terms of ascertaining the truth than the original trials were." *Id.* (citation omitted).

Since *Fields,* we have confirmed that "[n]ew legal principles, even when applied retroactively, do not apply to cases already closed." *Davis v. Moore,* 772 A.2d 204, 230 (D.C.2001) (en banc) (citation omitted). Although *Davis* implied, *id.* at 230 n. 24, that the two *Teague* exceptions to this rule quoted above will apply to collateral attacks on criminal convictions in Superior Court, we need not consider that point further because appellant has not ar-

gued—and cannot fairly argue—that either exception is met by the rule of *Crawford* and its progeny, as the court made clear in *Whorton*. Thus even if, *arguendo*, federal law does not prohibit the District of Columbia from applying *Crawford* retroactively on collateral review, District of Columbia law does. Accordingly, we affirm the trial court's decision that *Crawford* may not be applied retroactively on collateral review.

*Affirmed.*