Edward E. EVANS, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1536.

District of Columbia Court of Appeals.

Submitted Jan. 12, 1996.

Decided Aug. 29, 1996.

---

Terrence M. O'Connor filed a brief, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and Eva Polin, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, KING, and RUIZ, Associate Judges.

RUIZ, Associate Judge.

Edward Evans was convicted in a jury trial of first-degree murder while armed, possession of a firearm during a violent crime, and carrying a pistol without a license. Evans appeals, claiming that his conviction

should be reversed because (1) the prosecution's peremptory strikes against young jurors violated the District of Columbia Human Rights Act[1] ("DCHRA"), and (2) the trial court erred in finding that the prosecution's peremptory strikes were not racially motivated, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We affirm.

## I.

After the prosecution exercised its seventh peremptory strike during jury voir dire at trial, Evans objected because all seven jurors the government dismissed were black. In response, the prosecutor explained her challenges, four of which were based on the youth of the prospective jurors.[2] Evans argued that age was a pretext, and that the real reason for the prosecutor's strikes was race. He noted that there were two young white women that the prosecutor did not strike. One of the women Evans identified, Juror 020, was in fact two years older than the oldest black juror struck, and the other young white juror, Juror 961, was in fact later struck by the prosecutor. The judge noted on the record that there were "far more" black venirepersons than whites, and that although the prosecutor seemed to have legitimate explanations for her peremptory strikes, she should "be careful" in exercising her last three.

After three more rounds of peremptory strikes, Evans renewed his challenge, noting that an older black woman and an older black man had now been struck. The prosecutor explained that the older black man, Juror 525, was struck because he was a lawyer. The older black woman, Juror 234, was struck based on appearance, because she wore a "filthy dirty" camisole and her hair was "in disarray."

The judge found that the prosecutor's reasons were "legitimate," and rejected the *Batson* challenge. The final jury was composed of three whites and nine blacks who were, according to the judge, "basically middle-aged." Before the jury was sworn, the defense renewed its objection to the prosecutor's peremptory challenges, claiming that, in addition to violating *Batson*'s prohibition against race-based strikes, the government's age-based strikes violated the DCHRA. This challenge was also rejected by the trial judge, who did not believe that the DCHRA provides a basis to challenge peremptory strikes. We agree with the trial court on both counts.

## II. Peremptory Challenges and Applicable Restrictions

A peremptory challenge is the striking of a prospective juror from the petit jury without the need to articulate a reason for the strike. Peremptory challenges are historically a fundamental component of the adversarial system of justice embodied in the jury trial. *See Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894) (describing peremptory challenges as "one of the most important ... rights secured to the accused"); *see generally Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) ("peremptory challenge is a necessary part of trial by jury"), *overruled in part, Batson, supra*, 476 U.S. 79, 106 S.Ct. 1712. In the District of Columbia, ten peremptory challenges are provided by statute to each side in a felony case. D.C.Code § 23–105(a) (1996).[3] In addition, an unlimit-

---

1. D.C.Code §§ 1–2501 to –2557 (1992).

2. Specifically, the prosecutor offered the following explanations, in the order in which the challenges were exercised: Juror 345 was struck because he had once been a defense witness in an unrelated trial. Juror 422 was struck because she did not make eye contact with the prosecutor and she was twenty-two years old. Juror 122 was struck because she was twenty-six and she wore a black T-shirt with gold writing and big earrings. Juror 494 was struck because her responses to voir dire questions were hazy, incoherent, and confused. Jurors 328 and 150 were struck because they were twenty-seven and twenty-three, respectively. Juror 818 was struck because she was an accountant, which the prosecutor stated might indicate her requirement that guilt be established to a mathematical certainty.

3. D.C.Code § 23–105(a) provides:
   In a trial for an offense punishable by death, each side is entitled to twenty peremptory challenges. In a trial for an offense punishable by imprisonment for more than one year, each side is entitled to ten peremptory challenges. In all other criminal cases, each side is entitled to three peremptory challenges. If

ed number of challenges are permitted for cause. D.C.Code § 23–105(c) (1996).[4] This court has upheld the principle that each party has an equal right to the unfettered exercise of its peremptory strikes, whether by ensuring full access to relevant information, *Kleinbart v. United States*, 553 A.2d 1236, 1239 (D.C.1989) (holding that limiting voir dire unfairly prevented party from having adequate information for peremptory strikes) or by ensuring an equal number of peremptory challenges. *Armwood v. United States*, 373 A.2d 895, 897 (D.C.1977) (reversing conviction because prosecution was allowed more strikes than defendant).

■ Through their exercise of peremptory challenges, parties may "express an arbitrary preference" for a particular type of juror, thus attempting to affect the outcome of the case in a manner that each party considers favorable. *Robinson v. United States*, 448 A.2d 853, 856 (1982) (quoting *Frazier v. United States*, 335 U.S. 497, 506, 69 S.Ct. 201, 206, 93 L.Ed. 187 (1948)). The parties' ability to act upon their arbitrary preferences is nevertheless limited by the right of the juror not to be excluded from a jury for unconstitutional reasons. Specifically, the Equal Protection Clause of the United States Constitution prohibits the exercise of peremptory strikes that are based solely either on gender, *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), or on race. *Batson, supra*, 476 U.S. 79, 106 S.Ct. 1712 (holding race-based peremptories unconstitutional); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (holding that the Equal Protection Clause prohibits race-based peremptory challenges in the selection of civil juries). Granted by statute, peremptory challenges also may be limited by statute. The statute at issue, D.C.Code

§ 23–105(a), however, does not limit the exercise of peremptory challenges except as to the number allocated to each side. *Cf.* D.C.Code § 11–1903 (1995) (prohibiting exclusion from a venire pool based on certain characteristics, including race and age). In the instant case, Evans asks this court to reverse his conviction because the prosecutor's peremptory strikes violated the Constitution because they were race-based, and violated D.C. law because they were age-based.

## A. The Human Rights Act Claim

Evans contends that the prosecutor violated the District of Columbia Human Rights Act of 1977 by striking jurors solely because of their age. Specifically, Evans points to D.C.Code § 1–2511 (1992), which states that

Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations.

In *Baxter v. United States*, 640 A.2d 714 (D.C.1994), we held that age-based peremptory strikes are constitutionally permissible,[5] but left undecided whether the DCHRA prohibits them. *Id.* at 718 n. 6. Evans argues that the general language of § 1–2511 mandating that "every individual shall have an equal opportunity" to participate in "public service" prohibits the exercise of age-based peremptory challenges that prevent a citizen's service as a juror.[6] The question we must answer, then, is whether the DCHRA acts to curtail or abridge the rights of litigating parties conferred by D.C.Code § 23–

---

there is more than one defendant, or if a case is prosecuted both by the United States and by the District of Columbia, the court may allow additional peremptory challenges and permit them to be exercised separately or jointly, but in no event shall one side be entitled to more peremptory challenges than the other.

**4.** D.C.Code § 23–105(c) provides that "[a]ny juror or alternate juror may be challenged for cause."

**5.** The Supreme Court has not ruled on this issue.

**6.** D.C.Code § 1–2501 (1992) expresses the intent of the Council "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit, including, ... discrimination by reason of ... age...."

105(a) to the exercise of peremptory challenges in the jury selection process. For reasons that follow, we conclude that it does not.

In *Dean v. District of Columbia*, 653 A.2d 307 (D.C.1995), this court rejected a discrimination claim based on the DCHRA, finding that the statute contained no language or legislative history supporting the broad interpretation necessary to uphold the claim. *Id.* at 320. The appellant in *Dean* contended that the government's refusal to issue marriage licenses to same-sex couples unlawfully denied the couple "equal opportunity" to participate in an important aspect of life protected by the DCHRA, and more specifically, contravened the prohibition against discrimination in public accommodations. *Id.* at 318. The court recognized that the District of Columbia Council passed the DCHRA intending it to be a "powerful, flexible, and far-reaching prohibition against discrimination of many kinds, including sex and sexual orientation." *Id.* at 319. Nevertheless, the court held that the statute could not be read to mean that every discriminatory practice is prohibited. *Id.* (citing *NOW v. Mutual of Omaha Ins. Co.*, 531 A.2d 274, 277–78 (D.C. 1987)).

In *Dean*, we considered our earlier opinion in *NOW*, which concluded that the Council did not intend the DCHRA to apply to gender distinctions in actuarial pricing policies, even though the Council intended the Act to prohibit denial of "full and equal enjoyment" of the goods, services, and privileges provided by insurance companies generally. *NOW, supra*, 531 A.2d at 277. We emphasized that because the DCHRA had no specific language expressing an intent to overcome actuarial distinctions elsewhere specifically permitted by statute, the Council did not intend to effect such changes. *Id.* at 276. Similarly, finding no mention of such intent in the specific language or the legislative history of the DCHRA, *Dean* concluded that the Council had no intention, in passing the DCHRA, of changing the ordinary meaning of marriage, as understood in the marriage statute to apply only to heterosexual couples. *Dean, supra*, 653 A.2d at 320; *see* D.C.Code § 30–101–121 (1989 & 1993 Supp.).

■ We are presented with a similar situation in this case, which involves the general anti-discrimination provision in D.C.Code § 1–2511 and the peremptory challenge provision in D.C.Code § 23–105(a). The latter is a specific grant of a well-understood right of long standing. The former, on the other hand, is general because of its broad language. We note that there is no specific language in the DCHRA or commentary in its legislative history limiting peremptory challenges based on age or indeed, based on any characteristic prohibited in the DCHRA. Indeed, there is no mention at all regarding jury selection or peremptory challenges in the DCHRA. *See Baxter, supra*, 640 A.2d at 718 n. 6 ("[DCHRA] does not contain a word about peremptory challenges of jurors."). Evans contends that jury duty is included in the phrase "public service" in § 1–2511. The statute, however, does not define "public service," and the legislative history is similarly silent. Thus, general language forbidding discrimination in "public service" is too ambiguous a mandate to be interpreted to clearly include a limitation on statutorily-granted peremptory challenges. The language of the DCHRA simply does not support Evans's interpretation.

Nothing revealed in the legislative history of the DCHRA persuades us that Evans's interpretation is correct. The DCHRA was passed to "underscore the Council's intent that the elimination of discrimination within the District of Columbia should have the highest priority and that the Human Rights Act should therefore be read in harmony with and as supplementing other laws of the District." *Dean, supra*, 653 A.2d at 319 (citing COMM. ON PUBLIC SERVICES AND CONSUMER AFFAIRS, REPORT ON BILL NO. 2–179, THE HUMAN RIGHTS ACT OF 1977, at 3 (July 5, 1977)). Evans relies on a memo from the Chairman of the Economic Development Labor & Manpower Committee of the Council to the Council members regarding the proposed Human Rights Law. Although the memorandum indicates a strong general intent to prohibit discrimination, this intent does not automatically extend to a restriction on peremptory challenges. We adopt the court's reasoning in *Dean*, that without any

specific mention or reference in the language of the DCHRA or legislative history to the specific act claimed to be prohibited by the DCHRA, we cannot assume that the Council intended to cut back on the previously-existing, statutorily-permitted practice of exercising peremptory challenges on the basis of age.

For reasons similar to those guiding the *Dean* decision, we decline Evans's suggestion that we revoke, by judicial fiat, what is a legislative decision. We hold that § 1–2511 is not a prohibition on peremptory challenges based on age.[7] The language and legislative history of the DCHRA does not support a limitation on peremptory challenges, and the statute itself expresses an intent to provide redress in specifically enumerated contexts that do not include that of peremptory challenges. D.C.Code § 1–2512 (specifically prohibiting discrimination in employment); D.C.Code § 1–2515 (in real estate transactions); D.C.Code § 1–2519 (in public accommodations); D.C.Code § 1–2520 (in educational institutions); D.C.Code § 1–2513 (specifying exceptions for seniority systems in employment); D.C.Code § 1–2518(a) (same for owner-occupied buildings in housing). Because there is no indication that the Council intended, by enacting the DCHRA, to limit an express provision in an existing statute, we conclude that Evans cannot sustain his claim.

### B. The Batson Claim

Evans contends alternatively that the prosecution impermissibly exercised peremptory challenges on the basis of the jurors' race. Clearly, such conduct, if proven, is forbidden by the Constitution. *Batson, supra,* 476 U.S. at 86–87, 106 S.Ct. at 1717–18; *see Georgia v. McCollum,* 505 U.S. 42, 50, 112 S.Ct. 2348, 2354, 120 L.Ed.2d 33 (1992); *Edmonson, supra,* 500 U.S. at 630, 111 S.Ct. at 2088; *Nelson v. United States,* 649 A.2d 301, 310 (D.C.1994); *Little v. United States,* 613 A.2d 880, 884 (D.C.1992). Although following Ev-

ans's objection to the prosecutor's use of her challenges, the prosecutor purported to give race-neutral reasons for its peremptory strikes that the trial court accepted as legitimate, Evans contends that, (1) the prosecution's explanations lacked credibility, (2) the trial court erred by failing to probe into the explanations sufficiently, and (3) the trial court erred by failing to consider the strong indications that the reasons given were pretextual, and that the peremptory strikes were made solely on the basis of race.

■ In *Batson, supra,* 476 U.S. at 93–98, 106 S.Ct. at 1721–24, the Supreme Court established a three-step method for determining whether a prosecutor's use of peremptory challenges violates the Equal Protection Clause of the United States Constitution. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 93–95, 106 S.Ct. at 1721–22. This prima facie showing is a question of law, whether the combination of factors from empaneling and selecting the jury raises the "necessary inference of purposeful discrimination." *Little v. United States,* 613 A.2d 880, 885 (D.C.1992) (quoting *Batson, supra,* 476 U.S. at 96, 106 S.Ct. at 1723). The trial court may examine statistical disparities as one factor in assessing whether a prima facie showing has been made. *Little, supra,* 613 A.2d at 886. Statistical numbers alone, however, are not enough to establish or negate a prima facie showing. *Id.*

■ Second, once a prima facie showing has been made, the prosecution has the burden to provide a race-neutral explanation for its challenges. *Batson, supra,* 476 U.S. at 97–98, 106 S.Ct. at 1723–24. A prosecutor's explanation of peremptory challenges need not meet the requirements for cause, *id.* at 97, 106 S.Ct. at 1723—indeed, the prosecutor's explanation for the challenges need not be "persuasive, or even plausible." *Purkett v. Elem,* — U.S. —, —, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). *Batson* warned that to rebut a prima facie case, a

---

7. We do not reach the issue, proposed by the government, whether § 1–2511 can be the source of any substantive right. *See Gersman v. Group*

*Health Ass'n,* 725 F.Supp. 573 (D.D.C.1989), *aff'd,* 289 U.S.App.D.C. 332, 931 F.2d 1565 (1991).

clear and reasonably specific explanation of legitimate reasons must be given. This warning, however, was only

> meant to refute the notion that a prosecutor could satisfy his burden ... by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a "legitimate reasons" is not a reason that makes sense, but a reason that does not deny equal protection.

*Id.* Third, the trial court must determine whether the defendant has met his burden of establishing purposeful racial discrimination on the part of the prosecutor.[8] *Batson, supra,* 476 U.S. at 98, 106 S.Ct. at 1723–24.

In the present case, Evans made a prima facie case when he objected to the prosecutor's first seven strikes, which were all against black jurors. Evans is a black man and was charged with the murder of a white man motivated at least in part by racial animus.[9] Evans claims that the prima facie evidence of discrimination was considerable, and compares the case to *Tursio v. United States,* 634 A.2d 1205 (D.C.1993). In *Tursio,* a non-black, Latino defendant, who was represented by counsel who was also not black, was charged with the racially-motivated murder of a black decedent and was identified as the killer by two witnesses who were black. The defense witnesses were white. The prosecutor, who was black, struck all the venirepersons who were not black, thus resulting in a petit jury which was all black, with one white alternate remaining. Because the case was racially-charged, and the guilt of the defendant would turn on whether the jury credited the government's black witnesses more than it credited the defense's white witnesses, *id.* at 1210, this court concluded that the government had a heavier burden to overcome the defendant's prima facie case than it would in a case that was not so characterized by racial division. *See id.* (quoting the trial judge as stating that "the animus between blacks and Latinos in the

District was the 'strongest sort of prejudice [he'd] seen in [his] years' " (alterations in original)).

Even though, as in *Tursio,* we apply closer scrutiny to a claim of race discrimination in the exercise of peremptory challenges in a case that is racially charged, as is this one, the circumstances surrounding the strikes in this case dictate a different result than in *Tursio.* Unlike *Tursio,* the present case did not turn on a credibility assessment between witnesses of different races; the government's witnesses, like the defense witnesses, appear to have been of the same race as Evans. Unlike *Tursio,* involving a non-black defendant, in which the prosecutor used nine of his ten strikes to remove non-black jurors and left only one alternate juror who was white, in this case nine black persons remained on the twelve-person jury after all the peremptory challenges had been exercised. Finally, Evans's claim that the prosecution used its peremptory challenges to strike black jurors was considerably undermined when the trial court noted that the jury pool was mostly black. *See Little, supra,* 613 A.2d at 886 ("Given the composition of the typical venire in the District of Columbia, 'it is not particularly surprising [when] all of the persons struck by the prosecutor [are] black.' ") (quotations omitted).

In the end, the trial court must determine whether the defendant has proven purposeful race discrimination. It is this step where "the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* The ultimate burden of persuasion is always with the opponent of the strike. *Id.* (citation omitted); *Batson, supra,* 476 U.S. at 93, 106 S.Ct. at 1721 (stating that in any equal protection case, burden rests with defendant who alleges discriminatory selection of jury). In reviewing Evans's claim, we follow the stan-

---

8. Although we use the terms prosecutor and defendant to reflect the facts of this case where it is the defendant who has raised a *Batson* challenge, we note that the prosecutor may also challenge the defendant's peremptory strikes as violative of *Batson. McCollum, supra,* 505 U.S. 42, 112 S.Ct. 2348 (extending constitutional prohibition

to race-based peremptory challenges by defendants).

9. One witness testified in the first trial that Evans stated, "Let's get a white honkey" before the shooting.

dard set forth by the Supreme Court and give "great deference" to the trial court's findings on discriminatory intent. *Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991); *see Tursio, supra*, 634 A.2d at 1210 ("A trial court's findings pertaining to purposeful discrimination turn largely on evaluations of credibility and are entitled to great deference").

■ The trial court in this case concluded that the prosecutor's explanations of her peremptory strikes were neither pretextual nor unpersuasive. We hold that on this record, the trial court did not err in the level of scrutiny it applied prior to concluding that the prosecutor's explanations were adequate. *See Nelson, supra*, 649 A.2d at 311. Evans claims that the age explanation was a pretext for racial discrimination, noting that the prosecutor "kept one … young juror[ ] who w[as] white." Although the white juror remaining was relatively young at twenty-nine, she was nonetheless two years older than the oldest black juror that Evans claims was struck because of race. Moreover, Evans failed to show that the stricken black jurors in question were, but for race, identically situated to that white juror. *See Tursio, supra*, 634 A.2d at 1212. Assessing the entire record with which we have been presented, we note that the final jury was composed of nine blacks and three whites, that the jury was selected from a venire primarily composed of black venirepersons, that the prosecution struck at least one non-black juror, and that it provided what the trial court concluded were legitimate and independent bases for the rest of its peremptory strikes. Therefore, we conclude that the trial court did not err in finding that the defendant did not meet his burden of establishing purposeful discrimination based on race.

*Affirmed.*