Alan A. STEVENS, Appellant,

v.

UNITED STATES, Appellee.

Raynard S. WOODARD, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–129, 94–CF–161.

District of Columbia Court of Appeals.

Argued Nov. 20, 1995.

Decided Oct. 3, 1996.

Helena D. Mizrahi, Alexandria, VA, for appellant Stevens.

Frederick J. Sullivan, for appellant Woodard.

Michael N. Levy, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and William E. Lawler, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and RUIZ, Associate Judges.

FARRELL, Associate Judge.

These are consolidated appeals from appellants' convictions for armed robbery (D.C.Code §§ 22–2901, –3202 (1996)). The jury heard and saw evidence, including a bank surveillance videotape, that appellants robbed Isabel Smith at knifepoint as she withdrew money from an automatic teller machine (ATM) at a Crestar bank in the District of Columbia. Appellants raise five claims of error on appeal. We find that none provides ground for reversal, and affirm.

## I.

■ We first reject Woodard's contention that the evidence was insufficient to identify him as one of the two robbers. The argument derives from the fact that while Ms. Smith identified codefendant Stevens positively as one of the robbers at a show-up identification held twenty minutes after the assault, she was unable to identify Woodard as the other robber either at the scene or in court. Compensating for this nonidentification, however, was the bank surveillance videotape which captured the actions of the robbers and was played to the jury. Woodard offers no reason why this graphic, up-close visual recording of the assault (which took place in or immediately outside the ATM vestibule) was insufficient to support the jury's identification of him as one of the robbers. That evidence was corroborated, moreover, by Woodard's apprehension shortly after the assault in the company of Stevens, whom Smith positively identified and who incriminated himself at the time of his arrest.[1] Woodard had distanced himself from Stevens on first seeing the police approach; and when stopped he was sweating despite the cool, early morning weather. This evidence, in the aggregate, was more than sufficient to prove Woodard's identity. *See Peterson v. United States,* 657 A.2d 756, 759–61 (D.C.1995); *White v. United States,* 484 A.2d 553, 556–57 (D.C.1984).

## II.

■ Just before jury selection began, Stevens voiced his dissatisfaction with his lawyer and asked for appointment of new counsel. After the trial judge declined to appoint new counsel, Stevens asked to be allowed to represent himself. He contends on appeal that the judge failed to conduct an inquiry under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), sufficient to determine whether he knowingly and intelligently asserted his right to proceed *pro se.* In particular, he argues that when the judge postponed that inquiry until after the jury *voir dire* (pointing out that appellant had brought the matter up at "the very last second before trial," when a jury panel was waiting), the judge denied him the right to represent himself in jury selection.

The short answer to this argument is that the judge later engaged appellant in a lengthy colloquy about his desire to represent himself, ruled that he could proceed *pro se,* and explained that she would grant Woodard's request for a severance in that event and give Stevens a continuance of three months to prepare his *pro se* defense. Following discussions with his lawyer, Stevens withdrew his request to represent himself, forgoing the continuance and new jury selection the judge had offered. He thereby eliminated any basis for his present claim of

---

1. Stevens told the arresting officers, "I didn't commit no armed robbery. Tell that lady she's wrong," even though nothing in the police conduct had alerted him to the crime of which he was suspected or the gender of the victim.

prejudice from postponement of the *Faretta* inquiry.[2]

## III.

■ Stevens relatedly argues that his request to proceed *pro se* was tantamount to a request to be present at the bench during the portion of the jury *voir dire* conducted there. *See Boone v. United States,* 483 A.2d 1135 (D.C.1984) (en banc). Our decisions, however, require a defendant to assert unmistakably the right to participate in the *voir dire,* either by asking to be present at the bench or by objecting to exclusion. *See, e.g., Welch v. United States,* 466 A.2d 829, 839 (D.C. 1983). *See also United States v. Washington,* 227 U.S.App. D.C. 184, 192, 705 F.2d 489, 497 (1983) (cited with approval in *Welch* ) ("[B]ecause it is a right infrequently exercised and usually delegated to counsel, unless a *specific request* is made for the defendant to participate at bench examinations of prospective jurors, such right shall be deemed to have been waived") (emphasis added). Treating a request to proceed *pro se* as an assertion of the "infrequently exercised" right to be present at the bench would leave too much room for claims of error by afterthought.

## IV.

Stevens contends that the trial judge made inadequate inquiry into the source and merits of his asserted dissatisfaction with his counsel. Our decisions in *Monroe v. United States,* 389 A.2d 811 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), and *Farrell v. United States,* 391 A.2d 755 (D.C.1978), require pretrial assertions of inadequate representation to be taken seriously. But they do not require either the trial court, or this court on review, to ignore

the setting in which the assertion is made. We first review that context.

## A.

Stevens' attorney at the time was the fourth one appointed to represent him in this case, and the third about whom he had voiced dissatisfaction.[3] He raised the present objection to his attorney for the first time on the day of trial. More importantly, he raised it only after the court had heard testimony and arguments on three pretrial motions filed by appellant and rejected each— during all of which Stevens voiced no dissatisfaction with his attorney's efforts. Only after Stevens' challenge to the constitutionality of the show-up identification and admission of his incriminating statement, see note 1, *supra,* as well as his motion to dismiss the indictment, had all been denied[4] did Stevens apparently ask his attorney overnight to tell the court of his dissatisfaction.

Counsel then raised the matter with the judge, who asked Stevens to explain his unhappiness. Stevens replied: "I feel as though me and my lawyer has a personal vendetta, also as far as counsel on legal issues—on the legal issues and I'm not satisfied with his performance." The judge was aware that Stevens had voiced similar charges against two previous attorneys, *i.e.,* that one had connived with the prosecutor "to manipulate a grand jury process by bringing about additional information against me," and the other had worked to deprive him of his speedy trial rights. Nevertheless, the trial judge asked Stevens to "tell me exactly why you are not satisfied with [present counsel]"? "One reason," Stevens replied, was that his lawyer "did not adopt ... the legal issue that I presented in my *pro se*

---

**2.** We therefore have no occasion to consider whether *Faretta* mandates an inquiry at any particular time before trial, *e.g.,* before *voir dire* if the issue is raised at that time.

**3.** On the first occasion, the defense attorney was discovered to have an unrelated conflict of interest before Stevens' complaint could be resolved. On the second, his accusations against counsel (including, in counsel's words, that she had procured his consent to a waiver of speedy trial rights "only ... through mendacity") were

enough by themselves to cause a breakdown in the relationship such that the court permitted counsel's withdrawal.

**4.** The motion to dismiss, filed by Stevens *pro se,* claimed that he had not been tried within the time limits prescribed by the pretrial detention statute. Beyond the fact that this would not have entitled him to dismissal, the trial judge found that Stevens had not been detained under that statute in this case.

motion"—an issue that, as the judge knew, rested upon a misunderstanding of law and fact. See note 4, *supra*. Stevens' "second reason" was an asserted failure of counsel to adequately cross-examine an officer at the suppression hearing—something the trial judge, of course, had been fully able to evaluate. "That's why," Stevens concluded, "I'm not satisfied with his performance." Then he added: "There's other reasons, too, as far as *legal issues* in this case. We have discussed, you know, every time I ask, you know, to discuss *legal issues*, he walks away." [Emphasis added]. The judge concluded that she had "heard nothing that would justify removal of [counsel] in this case."

### B.

■ Stevens contends that this inquiry was inadequate because the judge did not elicit "the specifics of [his] complaint." The record refutes this argument. The judge asked appellant "exactly why" he was dissatisfied with his lawyer, and Stevens' response made clear that his disagreement revolved about counsel's judgment on legal issues such as choice of pretrial motions and counsel's tactics or performance at the suppression hearing. Given repeated opportunity to explain his dissatisfaction, Stevens cited no other reason than disputes such as these over legal strategy that caused his attorney—in Stevens' words—to "walk[ ] away" when Stevens sought to discuss them. And, as pointed out, the only "issues" Stevens could cite to the judge were ones as to which she had all the information needed to evaluate counsel's competence in raising them or not. No other claim of deficiency in counsel's pretrial performance was alleged. For that reason, direct inquiry of *counsel* "about the specifics of the [defendant's] complaint," *Nelson v. United States,* 601 A.2d 582, 592 (D.C.1991), normally required by *Monroe* and *Farrell,* was unnecessary in this case. In circumstances where it is clear that Stevens' unhappiness stemmed substantially from the unsuccessful outcome of his pretrial motions, and where—given full opportunity to speak—he voiced dissatisfaction only about matters largely committed to trial counsel's discretion, *see, e.g., Carter v. United States,* 475 A.2d 1118, 1123 (D.C.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985), we hold that the trial judge's inquiry complied with the dictates of *Monroe* and *Farrell.*

### V.

Appellants both contend, finally, that the trial judge denied or impaired their right to exercise peremptory challenges when she gave each side an eleventh peremptory strike after the government and the defense had each exercised the originally allotted ten. In light of the unusual situation to which the judge responded, we find no error in her action, and in any case no prejudice sufficient to warrant reversal.

Following completion of the *voir dire* and strikes for cause, the judge gave each side ten peremptory challenges and an additional one for use against an alternate. *See* D.C.Code § 23–105 (1996). The government and the defense alternated in exercising their strikes, the government going first. *See* Super. Ct.Crim. R. 24(b) (1996). In the tenth round, the government passed (which counted as a strike), and the defendants struck a juror. Juror number 076 was called to replace that juror in the jury box. However, juror 076, although next in order on the jury list, had mistakenly seated herself in the courtroom outside that order, despite the judge's instruction earlier that prospective jurors were to be seated in the order in which they appeared on the jury list. When the judge pointed out this discrepancy, the prosecutor objected that he had based his strikes upon the order in which the jurors were seated in the courtroom, and would have struck juror 076 except for the mistaken seating. The defense responded that it had used its strikes "for the purpose of getting to" (*i.e.,* seating) juror 076. The trial judge, finding that "[n]obody is at fault" but that juror 076 had been seated "completely out of order," resolved to give each side one additional strike "in an attempt to be fair to everybody." [5] The government then struck

5. As D.C.Code § 23–105(a) permits the court to allow more than ten peremptory challenges in codefendant cases, appellants cannot argue that the judge's action violated the statute.

juror 076, and the defense struck another juror as well.

 Appellants contend chiefly that the judge's action nullified their jury selection strategy which had been based on the assumption that neither side would have more than ten peremptories. Given the purpose of peremptory challenges, that claim does not support a finding of error in this case. Peremptory challenges "are a means to achieve the end of an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). They serve this end by allowing parties to *exclude* jurors they believe may be biased against them. *See Pointer v. United States*, 151 U.S. 396, 412, 14 S.Ct. 410, 416, 38 L.Ed. 208 (1894) ("The right of peremptory challenge ... is not of itself a right to select, but a right to reject, jurors"); *see also Williams v. United States*, 552 A.2d 510, 512 (D.C.1988). Moreover, as we stated in *Darab v. United States*, 623 A.2d 127 (D.C.1993), "A party to a lawsuit has no vested right to any particular juror; the right of challenge is the right to exclude incompetent jurors, not to include particular persons who may be competent." *Id.* at 139 (quoting *Anderson v. Dun & Bradstreet, Inc.*, 543 F.2d 732, 734 (10th Cir.1976)). The trial judge therefore deprived appellants of no right to the fruits of a "strategy" to win the seating of juror 076. While her action in allowing each side an additional peremptory may have disappointed somewhat appellants' effort to shape the jury to their liking, it was a proper response to the mishap that had occurred, reflecting "the practical necessities of judicial management" of the voir dire process. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984). What appellants were entitled to was an even playing field on which to carry out that strategy, and this the judge assured them by giving each side an eleventh strike, with the defense having the final one. *Compare Armwood v. United States*, 373 A.2d 895 (D.C.1977) (reversal because, after announcing that a pass would count as a strike, trial court let prosecutor exercise four challenges—three strikes and one pass—to the defense's three) *with Taylor v. United States*, 471 A.2d 999, 1004–05 (D.C.1983) (no reversal because trial court's announcement of rule that pass would not count as strike after seventh of ten peremptory rounds was finished "came at a time when both sides were in parity").

 Courts must "uph[o]ld the principle that each party has an equal right to the unfettered exercise of its peremptory strikes, whether by ensuring full access to relevant information, or by ensuring an equal number of peremptory challenges." *Evans v. United States*, 682 A.2d 644, 647 (D.C.1996) (citations omitted). In both respects the trial judge fulfilled that injunction; there was no error. So we need not consider the government's alternative argument that, assuming undue limitation of the right to exercise peremptories, appellants have not shown (or claimed) actual bias by a seated juror and hence prejudice sufficient to warrant reversal.

*Affirmed.*